BETH W. PETRONIO, *pro hac vice pending*
beth.petronio@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone:  (214) 939-5815
Facsimile:   (214) 939-5849

JASON N. HAYCOCK (SBN 278983)
jason.haycock@klgates.com
JONATHAN THEONUGRAHA (SBN 306812)
jonathan.theonugraha@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone:  (415) 882-8200
Facsimile:   (415) 882-8220

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# YOSEMITE DIVISION

| | |
|---|---|
| COUNTY OF KERN,<br><br>             Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., and DOES 1 THROUGH 20, inclusive,<br><br>             Defendants. | Case No. 1:20-cv-00853<br><br>**DEFENDANT TYLER TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:          July 30, 2020<br>Time:         2:00 p.m.<br>Dept.:         302<br>Judge:        The Hon. Jeremy D. Peterson<br><br><br>Complaint Filed:   May 18, 2020<br>Trial Date:              TBD |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................ 1

III. ARGUMENT AND AUTHORITIES ................................................................................ 4

    A. Kern Has Not Alleged Fraud With Specificity ...................................................... 5

    B. Kern's False Claims Act Claim Fails Because Kern Did Not Allege Materiality ............................................................................................................... 8

    C. Kern's Statutory Unfair Competition Claim Also Fails ........................................ 9

    D. Kern's Negligence Claim is Barred by the Economic Loss Rule ....................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ...................................................................................................................11

*Arena Restaurant and Lounge LLC v. Southern Glazer's Wine and Spirits, LLC*,
  No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ......................................11

*Arriaga v. Orgil Int'l Greenhouses Corp.*,
  No. 04-cv-0217-LAB, 2007 WL 2904055 (S.D. Cal. Oct. 2, 2007) ................................................7

*Bankcard America v. Elliott*,
  No. 89-C-1246, 1994 WL 494843 (N. D. Ill. Sept. 8, 1994) ..........................................................7

*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................................................................5

*Celador Int'l, Ltd. v. Walt Disney Co.*,
  347 F. Supp. 2d 846 (C.D. Cal. 2004) ............................................................................................7

*Cholla Ready Mix, Inc. v. Civish*,
  382 F.3d 969 (9th Cir. 2004) ..........................................................................................................5

*San Francisco Unified School District ex rel. Contreras v. First Student, Inc.*,
  224 Cal. App. 4th 627 (2014) .........................................................................................................8

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..............................................................................................10, 11

*Hagood v. Sonoma Cty. Water Agency*,
  81 F.3d 1465 (9th Cir. 1996) ..........................................................................................................8

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ..........................................................................................................8

*Hindo v. University of Health Sciences/The Chicago Medical School*,
  65 F.3d 608 (7th Cir. 1995) ............................................................................................................8

*U.S. ex rel. Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) ..........................................................................................................8

*Hsu v. Oz Optics Ltd.*,
  211 F.R.D. 615 (N.D. Cal. 2002) ....................................................................................................7

*Icasiano v. Allstate Ins. Co.*,
  103 F. Supp. 2d 1187 (N.D. Cal. 2000) ..........................................................................................7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................................5, 9

*Krouse v. BAC Home Loans Servicing, LP*,
    No. 2:10-CV-03309-MCE-EF, 2011 WL 2367093 (E.D. Cal. June 9, 2011) ...............................10

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
    245 F.3d 1048 (9th Cir. 2001) ........................................................................................................5

*Mat–Van, Inc. v. Sheldon Good & Co. Auctions*,
    No. 07–cv–912, 2007 WL 2206946 (S.D. Cal. July 27, 2007)........................................................7

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
    No. C 09-00537 MHP, 2009 WL 2084154 (N.D. Cal. July 13, 2009) ..........................................11

*Patriot Sci. Corp. v. Korodi*,
    504 F. Supp. 2d 952 (S.D. Cal. 2007)............................................................................................11

*Pena v. McArthur*,
    889 F. Supp. 403 (E.D. Cal. 1994).................................................................................................10

*Premiere Innovations, Inc. v. IWAS Indus.*,
    LLC, No. 07–cv–1083, 2007 WL 2873442 (S.D. Cal. Sept. 28, 2007)...........................................7

*Rhenigans v. Smith*,
    161 Cal. 362 (1911) ........................................................................................................................7

*Richardson v. Reliance Nat'l Indemnity Co.*,
    No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. March 9, 2000) ..........................................6, 7

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ..................................................................................................................12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ..................................................................................................9, 10

*Sipe v. Countrywide Bank*,
    690 F. Supp. 2d 1141 (E.D. Cal. 2010)............................................................................................9

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001)............................................................................................7

*In re Stac Elec. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ..........................................................................................................5

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ......................................................................................................10

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ........................................................................................11

*United States v. Bourseau*,
 531 F.3d 1159 (9th Cir. 2008) ..................................................................................................8

*Universal Studios Int'l B.V. v. Entertainment Television Network FZE*,
 CV 09-01348 GAF, 2009 WL 10675950 (N.D. Cal. Aug. 25, 2009)............................................7

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ..................................................................................................5

**Statutes**

CAL. BUS. & PROF. CODE § 17200 ................................................................................................4, 9

## I. INTRODUCTION

Plaintiff County of Kern ("Plaintiff" or "Kern") is improperly attempting to transform a disputed breach of contract claim into a False Claims Act/common law fraud case. At most, this case is a disagreement about whether Defendant Tyler Technologies, Inc. ("Tyler") properly implemented a software system for Kern consistent with a Software License and Services Agreement dated May 5, 2015. For over a year, the parties have been engaged in a dispute regarding Tyler's obligations pursuant to that Agreement and the scope of the deliverables related thereto. Kern's Complaint, however, improperly leaps to the incorrect and unsupportable conclusion that Tyler lied about its ability to implement the system. Kern's fraud-based allegations are vague and conclusory, fail to cite sufficient factual support, and do not withstand scrutiny under Federal Rule of Civil Procedure 9(b). Moreover, Kern's fraud, negligence, and unfair competition claims are all merely replicas of its breach of contract allegations in an obvious attempt to transform a run-of-the-mill contract dispute into a fraud case. Plaintiffs' fraud, negligence, and unfair competition claims fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and should be dismissed.

## II. FACTUAL BACKGROUND

Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Defendant Tyler Technologies, Inc.'s Original Answer, Affirmative Defenses and Counterclaims ("Answer and Counterclaims"), ¶ 84. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. *Id.* Tyler has implemented its Odyssey product suite in over 600 jurisdictions, including numerous statewide implementations. *Id.* Tyler's Odyssey product suite has one of Tyler's highest customer satisfaction ratings, and Tyler prides itself on its excellent customer services and ultimate client satisfaction. *Id.*

On May 5, 2015, Tyler and Kern executed a Software License and Professional Services Agreement, along with the various exhibits, attachments and ancillary documents related thereto (collectively, the "Agreement"). A copy of the Agreement was attached to Kern's Complaint as Exhibit A and, for ease of reference, is also **Exhibit A** to this Motion. Pursuant to the Agreement, Tyler agreed to provide Kern with a new Odyssey software system for Kern's criminal justice

departments (Sheriff's Office Jail, Probation Office, District Attorney and Public Defender). Exhibit A, p. 17. Tyler also entered into a separate, but "parallel" agreement to implement Odyssey's case management system for the Kern Superior Court. *Id.*

Odyssey modules are designed to be "Out-of-the-Box" products, meaning the software is not a custom-build for each client but is instead built on core functionality with certain features that are configurable out of the box, allowing individual clients to tailor Odyssey features to the individual client's processes and workflows. *See, e.g.*, Exhibit A, p. 17, n. 1. In addition, clients may ask Tyler to create custom enhancements within Odyssey to address specific client needs, which custom development services Tyler may agree to provide, usually at an additional cost to the client. Answer and Counterclaims, ¶ 89.

Here, the Agreement included three specific components: (i) Tyler would license its Odyssey software to Kern for a total of $1,582,000, payable in installments within 20 months of Agreement execution; (ii) Tyler would provide a total of 20,204 hours of professional services in connection with the implementation of the software and various specific customizations and development projects, for a total cost of $3,417,010; and (iii) Tyler would provide various maintenance and support services at an initial annual rate of $332,220, commencing 18 months after the Agreement was executed. Exhibit A, p. 2.

The Agreement recognized that "[t]he purpose of the project [was] for the County to transition away from the County's legacy criminal justice system." Exhibit A, p. 23. The Agreement incorporated a specific Statement of Work ("SOW") that detailed both parties' obligations with regard to the implementation tasks. Exhibit A, pp. 17-58. The SOW emphasized that Odyssey's "Out-of-the-Box" functionality was "highly configurable within Odyssey," but that "not every available functionality may offer the exact process that Kern participating agencies perform today." Exhibit A, p. 17, n. 1. The SOW further stated that the Agreement included an allowance of 1,800 development hours "for establishing any customizations or integrations that the County leadership determines to be absolutely necessary." *Id.* According to the SOW, it would be "crucial for the County and the participating justice agencies to work collaboratively with Tyler to determine what Odyssey

enhancements and/or integrations are to be included for Go-Live and which are to be included post Go-Live." *Id.*

The Agreement further recognizes that the implementation of Odyssey would be "a cooperative process requiring the time and resources of [Kern] personnel" and that Kern "shall, and shall cause its personnel to, use all reasonable efforts to cooperate with and assist Tyler as may be reasonably required to timely implement the Project, including, without limitation, providing reasonable information regarding its operations and reasonable access to its facilities." Exhibit A, p. 7. The Agreement further provides that "Tyler shall not be liable for failure to timely implement the Project when such failure is due to . . . the failure by [Kern] personnel to provide such cooperation or assistance (either through action or omission)." *Id.*

The Agreement states that Tyler "shall" invoice Kern pursuant to the milestone schedule outlined in the Agreement and that invoices must be paid by Kern within sixty (60) days. Exhibit A, p. 7. In addition, the SOW incorporates a draft project schedule, which estimated the duration of the project to be "approximately 20 months from project initiation." Exhibit A, p. 25. The SOW further noted that the project schedule would be "updated . . . throughout the project" and "adjusted as necessary." Exhibit A, p. 59. The parties originally contemplated a November 28, 2016 go-live date for the software. During the course of the implementation, however, Kern continually made decisions to expand the scope of the Agreement and the anticipated go-live date was delayed by agreement of both parties. Answer and Counterclaims, ¶ 98.

In September 2017, the parties executed an Amendment to the Agreement confirming that they had "mutually agreed on additional project components for a successful implementation." This Amendment was also attached to Kern's Complaint as Exhibit B and is attached hereto as **Exhibit B** as well. The additional project components included over 1,275 hours of additional professional services for newly added project enhancements. Answer and Counterclaims, ¶ 98. This was equal to more than 70% of the entire custom development budget found in the original Agreement. *Id.* Thus, the Amendment almost doubled the custom development scope of the project after two years of work. Exhibit B.

In addition to the significant increase in scope, Kern's implementation faced other challenges as well. *Id.* at ¶ 99. For example, there were problems with the data conversion and migration and Tyler frequently received inconsistent or contradictory instructions from different divisions within Kern. *Id.* These issues contributed to delays in implementation and, ultimately, to disagreement within Kern about how to proceed. *Id.* On March 12, 2019, Kern unexpectedly ordered Tyler to stop work on the project. *See* Complaint ¶ 29.

Ultimately, Kern filed suit against Tyler on May 18, 2020. Kern's Complaint asserts that Tyler breached the Agreement by failing to deliver "an integrated, functional, and operational information system to the County's criminal justice divisions." Complaint ¶ 34. Kern also asserts numerous fraud-based and negligence claims that contend that Tyler is liable in tort for allegedly misrepresenting its ability to perform its obligations in the Agreement. For example, Kern alleges that Tyler falsely represented that it "would ultimately deliver Odyssey in an integrated, operational and usable form" and that it "possessed the expertise, staff and skills" to do so. Complaint ¶¶ 11, 37, 46, 56. Kern's effort to transform this contract dispute into a fraud case is a transparent attempt to avoid the binding and applicable contractual limitation of liability provisions in the Agreement (Exhibit A, p. 8). In so doing, Kern seeks to improperly hold Tyler liable for numerous tort-based claims, including common law fraud, statutory unfair competition, and False Claims Act violations. With the exception of Kern's properly plead (albeit meritless) breach of contract and declaratory judgment claims, Kern's claims should be dismissed by this Court.

### III.     ARGUMENT AND AUTHORITIES

Kern's Complaint asserts seven causes of action: (1) Breach of Contract; (2) Intentional Misrepresentation; (3) Concealment; (4) California Statutory Unfair Competition (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*) ("Statutory Unfair Competition"); (5) California False Claims Act (CAL. GOV'T CODE §§ 12650, *et seq.*) ("False Claims Act"); (6) Negligence; and (7) Declaratory Relief. Kern's Complaint fails to state a claim on the second through sixth causes of action pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b) for at least the following reasons: (1) Kern has not alleged fraud with sufficient specificity to satisfy FRCP 9(b), which requires dismissal of its Intentional Misrepresentation, Concealment, False Claims Act and Statutory Unfair Competition

claims; (2) Kern has failed to adequately plead its False Claims Act claim for various other reasons; (3) Kern's Statutory Unfair Competition claim fails in multiple additional respects; and (4) Kern's negligence claims fails to state a claim separate and apart from the contractual breach claim.

### A. Kern Has Not Alleged Fraud With Specificity

Claims for intentional misrepresentation, concealment, violations of the False Claims Act, and Statutory Unfair Competition must each meet the requirements of FRCP 9(b) by pleading the elements of fraud with specificity. *See U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that, to the extent they are based on allegations of fraud, Statutory Unfair Competition claims are subject to the requirements of Rule 9(b)).

"[W]hen averments of fraud are made, the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted). FRCP 9(b) also serves "to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations and citations omitted).

Allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. For a complaint to satisfy the heightened pleading requirements of FRCP 9(b), a "plaintiff must set forth more than the neutral facts necessary to identify the transaction. **The plaintiff must set forth what is false or misleading about a statement, and why it is false.**" *Id*. (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis added)); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citing *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)). Conclusory statements do not suffice as factual allegations "if those conclusions cannot reasonably be drawn from the facts alleged." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

Here, Kern's allegations of fraud fail to meet the heightened pleading standard because Kern has failed to identify what is allegedly false and why it is false. Instead, all of Kern's fraud-based claims are based on the same five vague and conclusory statements allegedly made by "numerous Tyler employees" after the Agreement was executed in 2015 and up until 2019. Those allegations are summed up in one paragraph of Kern's Complaint and all relate to Tyler's alleged assurances about its ability to comply with the Agreement. Paragraph 11 of the Complaint identifies the five so-called misrepresentations as follows:

> (1) Tyler would ultimately deliver Odyssey in an integrated, operational and usable form, (2) Tyler possessed the expertise, staff and skills necessary to deliver Odyssey in an integrated, operational and usable form, (3) Tyler was on track to complete the installation and implementation of Odyssey; (4) Tyler was in the process of correcting, and had corrected, issues and problems experienced by the County with Odyssey's functionality and integration, and (5) Odyssey had the technical capacity and ability to accommodate the needs of the County's criminal justice divisions.

Complaint ¶ 11, *see also id.* at ¶¶ 15, 37, 46, 56.

These five vague assertions regarding Tyler's ability to perform its contractual obligations do not rise to the level required by FRCP 9(b). Nor does the conclusory assertion that "Tyler knew it would never be able to deliver Odyssey in an integrated operational and useable form for the County's criminal justice divisions and did not intend to perform in full under the Agreement." *Id.* at ¶ 11. These vague allegations, which were allegedly made by "numerous Tyler employees" after the Agreement was executed and supposedly over the course of four years do not provide sufficient specificity to satisfy FRCP 9(b)'s heightened requirements. And, even if Tyler theoretically failed to meet one or more of Kern's particular expectations, it does not follow that those five representations are necessarily false or fraudulent. It simply means the parties disagreed on certain deliverables pursuant to the Agreement.

Indeed, the statements themselves underscore why breach of contract claims should not be permitted to masquerade as fraud claims. There is no basis to look to alleged post-Agreement results or statements in an effort to prove falsity. A "mere failure to perform on a contract does not constitute fraud." *Richardson v. Reliance Nat'l Indemnity Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. March 9, 2000) (citing *Rhenigans v. Smith*, 161 Cal. 362, 366 (1911). Kern cannot even

allege a failure to perform, much less transform such a hypothetical failure into the basis for its fraud-based claims.

Indeed, in *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001), the Court rejected an effort to use "the alleged breach of contract" as "evidence that [defendant] never intended to honor the contract, thereby committing fraud." As the court noted:

> Such an assumption is unwarranted because it contradicts the heightened pleading requirements of Rule 9(b) and would allow "every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise."

*Smith*, 160 F. Supp. 2d at 153-54 (citing *Richardson*, 2000 WL 284211, at *5). This makes sense. Were it otherwise, "anyone with a breach of contract claim [could allege] tort damages by alleging that the promises broken were never intended to be performed." *Bankcard America v. Elliott*, No. 89-C-1246, 1994 WL 494843, at *4 (N. D. Ill. Sept. 8, 1994) (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)).

The vast majority of California courts are in accord with *Smith* and *Richardson*, and agree that "a failure to perform under a contract is insufficient evidence" of fraud. *Arriaga v. Orgil Int'l Greenhouses Corp.*, No. 04-cv-0217-LAB, 2007 WL 2904055, at *5 (S.D. Cal. Oct. 2, 2007); *see also Premiere Innovations, Inc. v. IWAS Indus.,* LLC, No. 07–cv–1083, 2007 WL 2873442 (S.D. Cal. Sept. 28, 2007), *Mat–Van, Inc. v. Sheldon Good & Co. Auctions*, No. 07–cv–912, 2007 WL 2206946 (S.D. Cal. July 27, 2007), *Celador Int'l, Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 856 (C.D. Cal. 2004); *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002); *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1191–92 (N.D. Cal. 2000); *Universal Studios Int'l B.V. v. Entertainment Television Network FZE*, CV 09-01348 GAF, 2009 WL 10675950, at *3 (N.D. Cal. Aug. 25, 2009).

Moreover, even if Kern were to point to specific issues that it felt Tyler had not properly delivered pursuant to the Agreement those items represent only contractual matters about which a good faith dispute exists. *See, e.g.,* Complaint ¶ 18.[1]

---

[1] Tyler denies the allegations in Paragraph 18 regarding Tyler's alleged failure to "operationalize" various functionality in Odyssey. Those issues are outside the scope of the pleadings at the motion to dismiss stage, but Tyler believes the evidence will establish that Tyler has fulfilled its contractual obligations in connection with the listed items. Moreover, Tyler adamantly denies the

Those allegations still would not be enough to allege *intentional* fraud. As the Ninth Circuit has stated:

> The requisite intent is the knowing presentation of what is known to be false, as opposed to innocent mistake or mere negligence. Bad math is no fraud, **proof of mistakes is not evidence that one is a cheat, and the common failings of engineers and other scientists are not culpable under the [False Claims Act]**. The statutory phrase known to be false does not mean scientifically untrue; it means a lie.

*Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (internal quotations and citations omitted, emphasis added); *see also U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995). If errors existed in the implementation—and Kern has only offered conclusory opinions and interpretations as to any supposed errors—those errors alone are not sufficient to support a fraud claim. Kern is obligated, when alleging fraud, to provide facts beyond mere errors or alleged contract breaches to support the allegation that a knowingly false statement was made. Kern's conclusory and unsupported allegations of fraud are simply insufficient to properly plead fraud with specificity, as required by FRCP 9(b). As a result, this Court should dismiss Kern's fraud-based claims, including common law fraud, Statutory Unfair Competition, and False Claims Act.

**B.    Kern's False Claims Act Claim Fails Because Kern Did Not Allege Materiality**

Even if Kern had met the heightened FRCP 9(b) pleading standards (it has not), Kern's False Claims Act claim still fails because Kern has failed to allege materiality. Liability under the False Claims Act is subject to an additional "judicially-imposed requirement that the false statement or claim be material." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999); *see also United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008) (noting that the FCA requires a false statement that was material to the decision-making process); *San Francisco Unified School District ex rel. Contreras v. First Student, Inc*., 224 Cal. App. 4th 627, 639-40 (2014) (applying the

---

allegations in Paragraphs 20 and 21 of the Complaint that suggest that Tyler's assignment of an "ODY" number to certain items on the parties' working list of issue constituted an admission that Tyler had failed to "operationalize" these issues. As Kern is well aware, every issue reported by Kern received an ODY number before Tyler had even undertaken an analysis of the reported issue and regardless of whether Tyler agreed with Kern's reported issue. Kern's effort to purposefully twist this simple administrative, standard project task into some sort of admission of liability is further evidence of their effort to morph this contract dispute into a fraud issue, hoping to create an improper windfall for Kern.

materiality requirement to the California False Claims Act). Here, Kern has failed entirely to allege materiality and its False Claims Act cause of action is subject to dismissal as a result.

### C. Kern's Statutory Unfair Competition Claim Also Fails

Kern's Statutory Unfair Competition claim fails in multiple other respects as well. In fact, Kern's claim looks nothing like a proper claim under California's Unfair Competition Law ("UCL"). CAL. BUS. & PROF. CODE § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice[.]" "[The UCL] is written in the disjunctive, establishing 'three varieties of unfair competition.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010) (internal quotations and citations omitted). Kern's Complaint fails to allege a business act or practice that falls within any of the three categories of conduct that the UCL prohibits.

First, because Kern's Complaint alleges a UCL claim based on fraudulent conduct, Kern's failure to satisfy FRCP 9(b) is fatal to its entire Statutory Unfair Competition claim. As noted above, FRCP 9(b) applies to allegations of "fraudulent" conduct under the UCL. *See also Kearns*, 567 F.3d at 1125. Kern's claim fails to the extent it specifically invokes the UCL's "fraudulent" conduct prohibition. *See Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1158 (E.D. Cal. 2010) ("[T]o the extent Plaintiff asserts a UCL claim that is based on or grounded in fraud, it must meet the requirements of Rule 9(b)"). Indeed, a claim that alleges a unified course of fraudulent conduct must satisfy Rule 9(b) "as a **whole**." *Kearns*, *supra*, 567 F.3d at 1127 (citing *Vess*, 317 F.3d at 1103-04 (emphasis added)). In *Kearns*, the Ninth Circuit affirmed the dismissal of a plaintiff's "entire complaint" because it "allege[d] a unified course of fraudulent conduct," yet failed to satisfy the requirements of FRCP 9(b). *Id*. In addition, despite recognizing that "[e]ach prong of the UCL is a separate and distinct theory of liability . . . offer[ing] an independent basis for relief" the Court expressly rejected the plaintiff's invitation to "evaluate his complaint under the unfairness prong of the UCL[.]" *Id*. Because Kern's Statutory Unfair Competition claim—like the rest of its Complaint—focuses on an alleged course of fraudulent conduct, the entire claim fails under Rule 9(b) regardless of which UCL prong applies.

Second, even if parts of Kern's Complaint survive Rule 9(b), Kern nonetheless fails to state a claim under the UCL's unlawfulness prong. The only potential violation of any law alleged by Kern's

claim is Tyler's supposed breach of contract. *See* Complaint ¶ 56 (alleging that Tyler misrepresented its "ability and intent to implement Odyssey in an integrated, operational and usable form"). "A breach of contract may form the predicate for a section 17200 claim, **provided it also constitutes conduct that is unlawful, or unfair, or fraudulent.**" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (emphasis added) (citation omitted). However, the failure to plead "that the breaches of contract are independently unlawful, unfair, or fraudulent" defeats such a claim. *Id.*; *see also Shroyer*, 622 F.3d at 1044 ("In other words, a common law violation such as breach of contract is insufficient . . . . Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."). And, as with FRCP 9(b), a conclusory allegation of unlawful, unfair or fraudulent conduct is not sufficient. *Pena v. McArthur*, 889 F. Supp. 403, 407-08 (E.D. Cal. 1994) (a "complaint's mere allegation that defendants had engaged in certain unlawful practices in the past and may do so in the future was not enough to state a cause of action under § 17200."). Here, there is no basis to suggest that any alleged breach of contract by Tyler also constituted an independently unlawful act. Kern cannot properly assert such a claim and has not even tried to do so.

Finally, Kern's Complaint also fails to state a claim under the UCL's unfairness prong. "[T]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). One of two prevailing tests might apply: (1) "'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'"; and (2) "'unfair' means 'conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition[,]' such that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 1169–70.

Regardless of which test applies, Kern fails to state a claim for unfairness because it has "neither alleged that [Tyler's] actions violated a public policy, nor . . . tethered [its] claim of unfairness to a constitutional or statutory provision or regulation carrying out such a statutory policy[.]" *Krouse*

10
DEFENDANT TYLER TECHNOLOGIES, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*v. BAC Home Loans Servicing, LP*, No. 2:10-CV-03309-MCE-EF, 2011 WL 2367093, at *6 (E.D. Cal. June 9, 2011); *see Davis*, 691 F.3d at 1170-71 ("[Plaintiff] fails to state a claim under either definition . . . . [W]e will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair." (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634, 644 (2006)). Kern's UCL claim is simply not proper and should be dismissed.

### D.  Kern's Negligence Claim is Barred by the Economic Loss Rule

Finally, Kern's negligence claim fails because the economic loss rule prohibits tort claims that are based solely on alleged breaches of contract, thereby limiting contracting parties to contract damages. *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). Pursuant to the Economic Loss Rule, "a plaintiff suffering only economic damages may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Arena Restaurant and Lounge LLC v. Southern Glazer's Wine and Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *6 (N.D. Cal. Apr. 16, 2018) (internal quotation marks and citation omitted).

Kern's negligence claim is based entirely on Tyler's alleged failure to perform under the Agreement. Complaint, ¶¶ 74-75. As with the fraud-based claims, Kern is effectively seeking to transform allegations underpinning a breach of contract claim into a tort claim. However, the "mere negligent breach of a contract is not sufficient basis for imposing tort liability." *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 964 (S.D. Cal. 2007) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)). Indeed, "conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law . . . and independent of the contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994). An "omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* (internal quotations and citations omitted).

Kern fails to allege the breach of any legal duty independent of Tyler's duty to perform pursuant to the Agreement. Where, as here, a negligence claim is based on nothing more than Tyler's alleged failure to fulfill its contractual promises, it should be dismissed. *Oracle USA, Inc. v. XL Glob.*

*Servs., Inc.*, No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) ("no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.").

The economic loss rule requires a plaintiff to recover in contract for purely economic loss due to disappointed expectations, unless it can demonstrate harm above and beyond a broken contractual promise. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Because Kern's negligence claim is supported by nothing more than an alleged failure to perform a contractual promise, that claim is barred by the economic loss rule and should be dismissed.

## CONCLUSION

WHEREFORE, Tyler respectfully requests, for the reasons articulated herein, that the Court grant this motion and dismiss Kern's claims for Intentional Misrepresentation; Concealment; Statutory Unfair Competition; False Claims Act; and Negligence, and grant Tyler such other and further relief to which it may be entitled.

**K&L GATES LLP**

Dated: June 26, 2020     By: */s/ Jason N. Haycock*
　　　　　　　　　　　　　　BETH W. PETRONIO
　　　　　　　　　　　　　　JASON N. HAYCOCK
　　　　　　　　　　　　　　JONATHAN THEONUGRAHA

　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　TYLER TECHNOLOGIES, INC.