1  EILEEN R. RIDLEY, CA Bar No. 151735
     eridley@foley.com
2  ALAN R. OUELLETTE, CA Bar No. 272745
     aouellette@foley.com
3  JAIME DORENBAUM, CA Bar No. 289555
     jdorenbaum@foley.com
4  **FOLEY & LARDNER LLP**
   555 CALIFORNIA STREET
5  SUITE 1700
   SAN FRANCISCO, CA 94104-1520
6  TELEPHONE:  415.434.4484
   FACSIMILE:   415.434.4507
7
   MARGO A. RAISON, COUNTY COUNSEL
8  **COUNTY OF KERN, STATE OF CALIFORNIA**
   By:  Andrew C. Thomson, Chief Deputy (SBN 149057)
9  Kern County Administrative Center
   1115 Truxtun Avenue, Fourth Floor
10 Bakersfield, CA 93301
   Telephone:  661.868.3800
11 Facsimile:  661-868-3805

12 Attorneys for Plaintiff
   County of Kern
13

14              **UNITED STATES DISTRICT COURT**

15             **EASTERN DISTRICT OF CALIFORNIA**

16

17 COUNTY OF KERN,                          ) Case No:  1:20-cv-00853-AWI-JDP
                                            )
18              PLAINTIFF,                   ) **PLAINTIFF COUNTY OF KERN'S**
                                            ) **OPPOSITION TO TYLER TECHNOLOGIES,**
19      v.                                   ) **INC.'S MOTION TO DISMISS**
                                            )
20 TYLER TECHNOLOGIES, INC., and DOES 1     ) Date:   July 30, 2020
   THROUGH 20, inclusive,                    ) Time:   2:00 p.m.
21                                           ) Dept:   302
                DEFENDANTS.                  )
22                                           ) Judge:  Honorable Anthony W. Ishii
                                            )
23                                           ) Complaint Filed:  May 18, 2020
                                            )
24 _____ )

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND.................................................... 1

        A.      The Agreement.................................................................................... 1

        B.      Tyler's Fraudulent Representations And Submission Of False Claims............................ 2

        C.      Tyler's Pattern Of Misconduct And Deceit After The Execution Of The
                Agreement............................................................................................ 3

III.    LEGAL STANDARDS ................................................................................... 4

IV.     ARGUMENT .................................................................................................. 5

        A.      The County's Fraud-Based Claims Satisfy Rule 9(b)....................... 5

        B.      The County's CFCA Claim Establishes Materiality........................ 9

        C.      The County's Claim For Violations Of The UCL Is Properly Pleaded............................ 10

        D.      The County's Claim For Negligence Is Not Barred By The Economic Loss Rule. ........ 11

V.      CONCLUSION.............................................................................................. 14

COUNTY OF KERN'S OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS
CASE NO. 1:20-CV-00853- AWI-JDP

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................................4

6

*Baggett v. Hewlett-Packard Co.,*
   582 F.Supp.2d 1261 (C.D. Cal. 2007) .......................................................................5

7

8

*Beaver v. Tarsadia Hotels,*
   816 F.3d 1170 (9th Cir. 2016) ..................................................................................10

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).....................................................................................................4

10

11

*Bly—Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) .....................................................................................4

12

*Century-National Ins. Co. v. Gardner,*
   No. 2:18-cv-02090-APG-BNW, 2019 U.S. Dist. LEXIS 220694
   (D. Nev. Dec. 19, 2019)...............................................................................................5

13

14

*City and Cnty. of San Francisco v. Cambridge Integrated Servs. Grp., Inc.,*
   No. C 04-1523 VRW, 2007 U.S. Dist. LEXIS 51376 (N.D. Cal. July 2, 2007) ................................13

15

16

*CoreLogic, Inc. v. Zurich Am. Ins. Co.,*
   No. 15-CV-03081-RS, 2016 U.S. Dist. LEXIS 121633 (N.D. Cal. Sept. 8, 2016) ......................13, 14

17

18

*Davis v. HSBC Bank,*
   691 F.3d 1152 (9th Cir. 2012) ..............................................................................10, 11

19

20

*Hargrove & Constanzo v. Commissioner,*
   240 F.R.D. 652 (E.D. Cal. 2006) .................................................................................7

21

*Hodsdon v. Mars, Inc.,*
   891 F.3d 857 (9th Cir. 2018) .....................................................................................11

22

23

*Int'l Gamco, Inc. v. Multimedia Games, Inc.,*
   No. 04CV1053 JLS (AJB), 2009 U.S. Dist. LEXIS 139906 (S.D. Cal. Aug. 11, 2009).....................6

24

*Oushana v. Lowe's Cos.,*
   No. 1:16-cv-01782-AWI-SAB, 2017 U.S. Dist. LEXIS 182852 (E.D. Cal. Nov. 2, 2017) ...............................4

25

26

*Pinnacle Armor, Inc. v. United States,*
   648 F.3d 708 (9th Cir. 2011) .......................................................................................4

27

28

*Richardson v. Reliance Nat'l Indem. Co.*,
   2000 U.S. Dist. LEXIS 2838, No. C-99-2952-CRB (N.D. Cal. March 9, 2000) ........................5, 6, 7

*Sacramento Reg'l Pub. Safety Commc'ns Ctr. v. Tyler Techs., Inc.*,
   No. 2:18-cv-1792-KJM-KJN, 2019 U.S. Dist. LEXIS 45250
   (E.D. Cal. Mar. 19, 2019) ........................................................................................4, 6, 7, 9, 10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   606 F.3d 658 (9th Cir. 2010) ................................................................................................4

*Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*,
   No. CV-F-05-736 REC/LJO, 2005 U.S. Dist. LEXIS 36361,
   (E.D. Cal. Aug. 29, 2005) ........................................................................................6

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001)........................................................................5, 6, 7

*United States v. Hempfling*,
   431 F. Supp. 2d 1069 (E.D. Cal. 2006)........................................................................7

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018)........................................................................12, 13

*Woodard v. Labrada*,
   No. EDCV 16-00189 JGB (SPx), 2017 U.S. Dist. LEXIS 124546
   (C.D. Cal. July 31, 2017) ........................................................................................5

**California Cases**

*Biakanja v. Irving*,
   49 Cal. 2d 647 (1958) ........................................................................................13

*Candelore v. Tinder, Inc.*,
   19 Cal. App. 5th 1138 (2018) ........................................................................................11

*C9 Ventures v. SVC-West, L.P.*,
   202 Cal. App. 4th 1483 (2012)

*S.F. Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*,
   182 Cal. App. 4th 438 (2010) ........................................................................................10

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) ........................................................................................12

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
   11 Cal. 4th 85 (1995) ........................................................................................12

*J'Aire Corp. v. Gregory*,
   24 Cal. 3d 799 (1979) ........................................................................................13

*Locke v. Warner Bros., Inc.*,
 57 Cal. App. 4th 354 (1997) ...........................................................................5

*Moreno v. Sanchez*,
 106 Cal. App. 4th 1415 (2003) ......................................................................13

*North Am. Chem. Co. v. Superior Court*,
 59 Cal. App. 4th 764 (1997) .........................................................................13

*State of California v. Altus Finance*,
 36 Cal. 4th 1284 (2005) .................................................................................9

*Wall St. Network, Ltd. v. N.Y. Times Co.*,
 164 Cal. App. 4th 1171 (2008) ......................................................................13

**California Statutes**

Cal. Gov't Code § 12650(b)(4) ......................................................................9

Cal. Gov't Code § 12651(a)(1) ......................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................4, 5, 6, 7, 9, 10

Fed. R. Civ. P. 12(b)(6)....................................................................................4

COUNTY OF KERN'S OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS
CASE NO. 1:20-CV-00853- AWI-JDP

## I.   INTRODUCTION

This dispute arises out of Tyler Technologies, Inc.'s ("Tyler") failure to install and implement an integrated information system for the County of Kern's (the "County") criminal justice divisions and Tyler's subsequent misrepresentations to the County for the purpose of increasing the value of the project to Tyler at the expense of the County, the public and taxpayers.

Tyler does not dispute that the County pleaded valid claims for breach of contract and declaratory relief.   Instead, Tyler moves to dismiss the County's claims for intentional misrepresentation, concealment, violations of the California False Claims Act (the "CFCA"), violations of California's Unfair Competition Law (the "UCL"), and negligence based on its distorted and self-serving reading of the Complaint.   The crux of Tyler's argument is that Tyler's breach of its contract with the County does not, in and of itself, constitute fraud, negligence or a violation of the CFCA or the UCL.   As set forth in detail below, the County's claims do not depend on the terms of the parties' agreement or Tyler's breach of contract.   Rather, they are based on independently actionable misconduct by Tyler.   Notably, in another case brought by a California public entity against Tyler based on similar allegations, the District Court for the Eastern District of California rejected the same arguments advanced by Tyler here.   Tyler's attempt to recast its misconduct as a mere breach of contract should be rejected.

For these reasons, and the reasons set forth in greater detail below, the County respectfully requests that the Court deny Tyler's motion to dismiss in its entirety.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The Agreement.

In May 2015, Tyler and the County entered into a Software License and Professional Services Agreement (the "Agreement") under which Tyler agreed to replace the County's legacy information system with Odyssey Case Manager ("Odyssey") for the County's criminal justice divisions.   Compl., ¶¶ 5-6.   The County's criminal justice divisions are comprised of the Sheriff's Office, Probation Department, Jail, District Attorney's Office, and Public Defender's Office.   *Id*. at ¶ 7.   After years of accepting the County's payments, Tyler has not delivered any functional or operational component of Odyssey—let alone the integrated information system required under the agreement—and the County is

thereby forced to still use the same legacy information system that the County hired Tyler to replace.  *Id*. at ¶ 10.

### B.     Tyler's Fraudulent Representations And Submission Of False Claims.

After the execution of the Agreement, Tyler repeatedly (1) misrepresented the status of the project to the County, (2) misrepresented its ability to complete the project to the County, (3) misrepresented its expertise, staff and skills to the County, (4) falsely stated it was working on correcting issues with the implementation of Odyssey when, in fact, it was not working on correcting the issues, and (5) falsely stated that it had corrected issues with Odyssey that it had not, in fact, corrected. Compl. ¶ 11.  These misrepresentations were made by numerous Tyler employees, "including Ken Miles, Teresa Perry, Gina Sewel, Shayne Boyd and Brian Williams, who were each authorized to speak on behalf and act on behalf of Tyler." *Id*.

Tyler also submitted invoices to the County that falsely represented that the invoiced work was "completed" and integral to the implementation of Odyssey when, in fact, neither of these representations was true.  *Id*. at 16.  Specifically, Tyler represented that it had completed "data conversion milestones, integration milestones, training, and maintenance" that were not, in fact, actually completed.  *Id*.  The County relied on these misrepresentations when the County (1) allowed Tyler to continue to purportedly work on the implementation of Odyssey, (2) paid Tyler's invoices for work that did not support the implementation of Odyssey, and (3) paid Tyler's invoices for work that Tyler did not actually complete.  *Id*. at ¶ 12.  Tyler's misrepresentations also fraudulently induced the County to enter into Amendment No. 1 to the Agreement, which increased the value and duration of the project in favor Tyler. *Id*. at ¶¶ 11-14.

Further, Tyler's false and fraudulent representations are confirmed by Tyler's acquisition of CaseloadPRO in September 2018. *Id*. at ¶ 25.  Tyler acquired CaseloadPRO for the specific purpose of replacing Odyssey because Tyler knew that it could not implement or operationalize Odyssey for use by probation departments across the country, including the County's Probation Department.  *Id*. at ¶ 27.  In spite of this, Tyler never disclosed—and instead actively concealed—that it could not implement and operationalize Odyssey for the County's Probation Department even though Tyler purchased CaseloadPRO for this very reason.  *Id*.  During the time that it was searching for a replacement system

2

and negotiating the acquisition of CaseloadPRO, Tyler continued to "work" on implementing Odyssey for the Probation Department and generated excessive billings for the purported "work" even though Tyler knew that it would abandon Odyssey at the County's Probation Department and replace it with CaseloadPRO as soon as the acquisition was complete. *Id*.

### C. Tyler's Pattern Of Misconduct And Deceit After The Execution Of The Agreement.

During the course of Tyler's "work," Tyler also engaged in a pattern of misconduct and deceit designed to conceal the truth from the County. For instance, when the County reported problems with Odyssey to Tyler, Tyler would ask the County to send it specific examples of the issue, which the County would do. *Id*. Tyler would then "spot fix" the example sent by the County by manipulating Odyssey to simulate a correction without attempting to fix the actual issue and without actually correcting the underlying issue. *Id*. Nevertheless, Tyler would falsely represent to the County that it had fixed the reported problem. *Id*. The example issues identified by the County would eventually reappear, the underlying issue would persist, and additional issues would arise attributable to Tyler's manipulation of the system to simulate a non-existent "fix" for the purpose of deceiving the County. *Id*.

Tyler also, and without authorization, used the login credentials of County employees to access the system without the County's knowledge, authorization or permission. *Id*. at ¶ 22. Tyler then completed work flow processes and tasks while logged in as an employee of the County using a simulated, non-existent "fix." *Id*. When the County would inform Tyler that the issues that it had previously reported had not been fixed, Tyler would deny that any issue remained and point to reports that it generated from the system showing the completion of work flow processes and tasks by County employees. *Id*. However, these work flow processes and tasks were completed by Tyler employees, including Steven Leduc, that had used the login credentials of County employees without their knowledge, authorization or permission for the purpose of manipulating the County's system to simulate the prior completion of work flow processes and tasks that could not be recreated or repeated by County employees. *Id*.

Tyler's misconduct and intent to deceive the County is also confirmed by Tyler's concealment of its intent to abandon Odyssey and replace it with CaseloadPRO in order to continue to generate exorbitant billings to the County for "work" that was unnecessary because Tyler knew it would

unilaterally decide to cease work on Odyssey at the County's Probation Department as soon as the acquisition of CaseloadPro was complete. *Id*. at ¶ 27.

In total, the County relied on Tyler's misrepresentations and was damaged by Tyler's concealment of material fact by paying Tyler over $4.2 million without receiving anything useable or operational in return. *Id*. at ¶ 16. The County also deployed over 100 employees to assist Tyler with Odyssey's implementation. *Id*. at ¶ 24. These employees worked—and ultimately wasted—tens of thousands of hours on the project that would not have been expended absent Tyler's misrepresentations and concealment of material fact. *Id*. The value of the time spent by the County's employees on the implementation of Odyssey exceeded $9 million. *Id*.

## III.   LEGAL STANDARDS

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "allege 'sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A court must accept the well-pleaded factual allegations of the complaint as true and construe them in the light most favorable to plaintiffs. *Id*. Dismissal is proper only in the absence of a cognizable legal theory or sufficient supporting facts. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 664 (9th Cir. 2010).

For claims sounding in fraud, Rule 9(b) requires that a plaintiff's allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Sacramento Reg'l Pub. Safety Commc'ns Ctr. v. Tyler Techs., Inc.*, No. 2:18-cv-1792-KJM-KJN, 2019 U.S. Dist. LEXIS 45250, at *4 (E.D. Cal. Mar. 19, 2019) (quoting *Bly—Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). While claims for concealment are subject to Rule 9(b), Rule 9(b) does not require the "same level of specificity required by a normal fraud claim." *Oushana v. Lowe's Cos.*, No. 1:16-cv-01782-AWI-SAB, 2017 U.S. Dist. LEXIS 182852, at *8-9 (E.D. Cal. Nov. 2, 2017) (citing *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2017 U.S. Dist. LEXIS 124546, at *24-

4

25 (C.D. Cal. July 31, 2017)) ("[a] fraud by omission or fraud by concealment claim 'can succeed without the same level of specificity required by a normal fraud claim.'"); *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1267 (C.D. Cal. 2007) ("[I]t is clear that a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and specific content of an omission . . . [b]ecause such a plaintiff is alleging a failure to act instead of an affirmative act. . . .").

## IV.   ARGUMENT

### A.   The County's Fraud-Based Claims Satisfy Rule 9(b).

Tyler's central argument is that the County's claims for intentional misrepresentation, concealment, violations of the CFCA, and violations of the UCL do not satisfy Rule 9(b) because they merely allege Tyler's breach of the Agreement and Amendment.  Contrary to Tyler's oversimplified reading of the Complaint, the Complaint sets forth detailed factual allegations documenting the "who, what, when, where, and how" of Tyler's fraud, which is based on independently actionable misrepresentations and deceit by Tyler that is not dependent on Tyler's obligations under the Agreement and Amendment or Tyler's breach of contract.  These factual allegations satisfy Rule 9(b) for the County's fraud-based claims.

As an initial matter, Tyler principally relies on *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150 (S.D. Cal. 2001) and *Richardson v. Reliance Nat'l Indem. Co.*, 2000 U.S. Dist. LEXIS 2838, No. C-99-2952-CRB (N.D. Cal. March 9, 2000) in support of its argument that the Complaint does not satisfy Rule 9(b).  ECF No. 9 (Motion to Dismiss) at 6:26-7:10.  Both cases stand for the unremarkable proposition that failure to perform a contract does not, in and of itself, constitute fraud.  *Smith*, 160 F. Supp. 2d at 1152; *Richardson*, 2000 U.S. Dist. LEXIS 2838, at *11.[1]  Courts routinely distinguish *Smith* and *Richardson* where, as here, a plaintiff's fraud-based claims are predicated on representations that are parallel to, but not solely derivative of, the parties' written contract.  *See, e.g., Century-National Ins. Co. v. Gardner*, No. 2:18-cv-02090-APG-BNW, 2019 U.S. Dist. LEXIS 220694, at *6 (D. Nev. Dec. 19, 2019) (declining to follow *Smith* because the alleged misrepresentation in that case was contained in the

---

[1] *Smith* and *Richardson* both confirm that "[a]lthough failure to perform a contract does not constitute fraud, a promise made without intention to perform can be actionable fraud." *Smith*, 160 F. Supp. 2d at 1152 (citing *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 367 (1997)); *see also Richardson*, 2000 U.S. Dist. LEXIS 2838, at *11.

plaintiff's insurance policy and was not independent of the terms of the contract); *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*, No. CV-F-05-736 REC/LJO, 2005 U.S. Dist. LEXIS 36361, at *15-16 (E.D. Cal. Aug. 29, 2005) (distinguishing *Smith* on the grounds that plaintiff's complaint "alleges more than a claim of fraud based solely on the fact that the insurance policy was allegedly breached"); *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, No. 04CV1053 JLS (AJB), 2009 U.S. Dist. LEXIS 139906, at *12-13 (S.D. Cal. Aug. 11, 2009) (noting that the "complaint distinguishes counterdefendants' oral promises from the obligations that counterdefendants entered via written contract" and expressly distinguishing *Smith* because the claimant's fraud claim was predicated on "separate oral promises").

Further, the District Court for the Eastern District of California recently rejected the same Rule 9(b) argument advanced by Tyler here.  In *Sacramento Reg'l Pub. Safety Commc'ns Ctr. v. Tyler Techs.*, No. 2:18-cv-1792-KJM-KJN, 2019 U.S. Dist. LEXIS 45250, (E.D. Cal. Mar. 19, 2019), a California joint powers authority ("JPA") alleged "that defendant agreed it would provide software it identified as fully compliant with plaintiff's technical requirements in a timely manner, but defendant failed to do so and thus breached the parties' agreement." *Tyler*, 2019 U.S. Dist. LEXIS 45250, at *2-3.  Specifically, the JPA paid Tyler "$2,128,393.26 without receiving the benefit of the parties' bargain . . . ." *Id.* at *3. In addition to the breach of contract claim, the JPA averred fraud and CFCA claims against Tyler. *Id.* at *4-5.  In denying Tyler's motion to dismiss these claims under Rule 9(b), the District Court expressly distinguished *Smith* and *Richardson* because, "[u]nlike the cases defendant relies on, plaintiff is not merely alleging that defendant never planned to perform; rather, plaintiff is alleging defendant induced plaintiff to enter into a contract by representing defendant already had in its possession technology it in fact lacked." *Id.* at *7-8.  Further, the JPA alleged that Tyler deceived it "by misrepresenting its progress on the project" after Tyler and the JPA entered into the agreement. *Id.* at 11.  The Court found these allegations more than sufficient to satisfy Rule 9(b).

Here, the Complaint details how, after the execution of the Agreement, Tyler repeatedly:

- Misrepresented the status of the project;

- Misrepresented its ability to complete the project;

- Misrepresented its expertise, staff and skills;

6

- Falsely stated that it was working on correcting issues with the implementation of Odyssey when, in fact, it was not working on correcting the issues;

- Falsely stated that it had corrected issues with Odyssey that it had not, in fact, corrected; and

- Submitted invoices to the County for work that was "completed" and integral to the implementation of Odyssey when, in fact, neither of these representations was true.

Compl. ¶¶ 11, 16.  As in *Tyler*, these misrepresentations post-date the execution of the Agreement and are separate and distinct from Tyler's contractual obligations.  *Id*. at ¶ 11.  The Complaint attributes these representations to specific Tyler employees, "including Ken Miles, Teresa Perry, Gina Sewel, Shayne Boyd and Brian Williams, who were each authorized to speak on behalf and act on behalf of Tyler."  As to Tyler's fraudulent invoices, Tyler represented to the County that it had completed "data conversion milestones, integration milestones, training, and maintenance" that were not, in fact, actually completed.  *Id*. at ¶ 16.

Notably, Tyler made these misrepresentations "repeatedly" subsequent to the execution of the Agreement through at least September 2018 and submitted fraudulent invoices to the County through March 2020.  Compl. ¶¶ 25-30.  Where, as here, "fraud allegedly occurred over a period of time . . . Rule 9(b)'s requirement that the circumstances of fraud to be stated with particularity are less stringently applied."  *Hargrove & Constanzo v. Commissioner*, 240 F.R.D. 652, 655 (E.D. Cal. 2006) (quoting *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006)).

As in *Tyler*, and unlike *Smith* and *Richardson*, the County's claims do not depend on Tyler's performance of its obligations under the Agreement.   Rather, the County relied on these misrepresentations of material fact—and not any of Tyler's contractual undertaking—when the County allowed Tyler to continue to purportedly work on the implementation of Odyssey based on Tyler's misrepresentations concerning the status of the project, Tyler's ability to complete the project, and Tyler's false statements that it "completed" essential work supporting the integration and implementation of Odyssey.  Compl. ¶ 12.  The County also relied on Tyler's misrepresentations in paying Tyler's fraudulent invoices based on the representation that it had completed "data conversion milestones, integration milestones, training, and maintenance" that were not, in fact, actually completed

7

or necessary to the implementation and integration of Odyssey.  *Id*. at ¶¶ 12, 16.  Tyler's misrepresentations also fraudulently induced the County to enter into the Amendment, which increased the value and duration of the project in favor Tyler even though Tyler knew that it would not be able to deliver Odyssey in an operational, integrated or useable form.  *Id*. at ¶¶ 11-14.  Ultimately, Tyler's misrepresentations served their purpose: to enlarge the duration of the engagement and Tyler's billing and to enrich Tyler at the expense of the County and the County's taxpayers.  *Id*. at 15.

The Complaint pleads additional facts that document Tyler's intent to deceive the County and the steps that Tyler undertook to conceal the truth from the County.  Compl., ¶ 15.  For instance, when the County reported issues with Odyssey to Tyler, Tyler concealed its fraudulent representations by manipulating Odyssey to simulate non-existent fixes.  *Id*. at ¶ 21.  In other instances, Tyler deleted the County's reported issues for an issue reporting database and then falsely stated that no reported issue existed.  *Id*.  Additionally, Tyler sought to conceal the truth regarding its fraudulent representations by using the login credentials of County employees to access the system without the County's knowledge or permission and completed work flow processes and tasks while logged in as the County employee to simulate a non-existent "fix" to a reported problem.  *Id*. at ¶ 22.  Tyler then falsely represented that it fixed problems reported by the County because County employees completed the work flow processes and tasks when, in fact, Tyler employees, including Steven Leduc, masqueraded as a County employee when simulating non-existent fixes within the system for the purpose of deceiving the County.  *Id*. at ¶ 22.

Tyler's misrepresentations are confirmed by Tyler's decision to abandon Odyssey for the County's Probation Department and to replace Odyssey with a new information system, CaseloadPRO, which Tyler acquired in September 2018 because it knew that Odyssey could not be operationalized to meet the needs of probation departments across California, including at the County.  Compl. ¶ 25.  Even though Tyler was searching for, and negotiating the acquisition of, a replacement information system because Tyler intended to abandon Odyssey, Tyler never disclosed this to the County.  *Id*. at 27.  Instead, Tyler continued to generate exorbitant fees for "work" that Tyler misrepresented was essential to implement Odyssey even though Tyler had already made the decision to abandon Odyssey as soon as it acquired a replacement information system.  *Id*.

8

In sum, the County's allegations satisfy the requirements of Rule 9(b), and Tyler's motion to dismiss under Rule 9(b) should be denied as a result.  The County notes that Tyler does not challenge the sufficiency of the County's claims for intentional misrepresentation and concealment on any other grounds, and the County should be permitted to proceed on these claims irrespective of the Court's ruling on the additional grounds for dismissal raised by Tyler addressed below.[2]

## B.   The County's CFCA Claim Establishes Materiality.

Tyler perplexingly argues that the County "failed to allege materiality" with respect to its CFCA claim.  ECF No. 9 (Motion to Dismiss) at 8:18-19.  In the three sentences that Tyler devotes to this argument, Tyler fails to explain how the County did not allege materiality or the reasons for dismissal on this basis.  Nevertheless, the County substantively responds to Tyler's baseless and conclusory assertion of a pleading deficiency.

The California False Claims Act was enacted to prevent fraud on the public treasury.  *State of California v. Altus Finance*, 36 Cal. 4th 1284, 1296 (2005).  The CFCA establishes liability for one who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval."  Cal. Gov't Code § 12651(a)(1).  As relevant here, the CFCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services."  Cal. Gov't Code § 12650(b)(4).  In *Tyler*, the District Court for the Eastern District of California rejected the same "materiality" argument advanced by Tyler in this case.  There, the District Court held that the JPA's allegation that Tyler "falsely represented its ability to provide the system plaintiff required in the timeframe plaintiff required, but nonetheless invoiced and received $2,128,393.26 by misrepresenting its progress on the project" was sufficient to establish materiality.  *Tyler*, 2019 U.S. Dist. LEXIS 45250, at *11-12 (citing *S.F. Unified Sch. Dist. ex rel. Contreras v.*

---

[2] In a footnote, Tyler accuses the County "hoping to create an improper windfall for Kern" through its fraud-based claims.  ECF No. 9 (Motion to Dismiss) at fn. 1.  Tyler's accusation is baseless, as Tyler is the only recipient of an "improper windfall" here.  The County hired Tyler for the specific purpose of replacing its outdated legacy information system with Odyssey and paid Tyler over $4.2 million and lost over $9 million worth of County employee time without receiving ***anything*** useable from Tyler in return.  The County expended these public funds as a direct result of Tyler's misconduct and deceit and is now stuck using the same outdated information system that it hired Tyler to replace in 2015.  Far from seeking an "improper windfall," the County is now expending legal fees in order to recover the taxpayer dollars that Tyler defrauded from the County so that they can be used to support essential governmental functions.

9

*Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 457 (2010)).

Similarly, the County alleges that it paid Tyler's fraudulent invoices because Tyler represented that it "completed" the invoiced work and that the invoiced work was intended to result in the operationalization and integration of Odyssey.   Compl. ¶¶ 62-64.  Neither of these representations was true.  *Id*. at ¶ 64.  Logically, the County would not have paid Tyler for work that Tyler did not complete or work that was not necessary or intended to result in the implementation and integration of Odyssey. *Id*. at ¶ 67. Further, the County alleged that Tyler (1) misrepresented the status of the project to the County, (2) misrepresented its ability to complete the project to the County, (3) misrepresented its expertise, staff and skills to the County, (4) falsely stated it was working on correcting issues with the implementation of Odyssey when, in fact, it was not working on correcting the issues, and (5) falsely stated that it had corrected issues with Odyssey that it had not, in fact, corrected.  *Id*. at ¶ 11.  The County confirmed that, "[h]ad the County known the actual and true facts regarding the fraudulent request for payment, it would not have made said payments."  *Id*. at ¶ 67.

In short, the County's allegations go above and beyond the allegations that the District Court determined satisfied the materiality prong of the CFCA in *Tyler*.  Tyler's motion to dismiss the CFCA claim for lack of materiality should be denied.

**C.     The County's Claim For Violations Of The UCL Is Properly Pleaded.**

The UCL broadly proscribes the use of any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code. § 17200; *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016).  The County's UCL claim is actionable under each prong of the UCL because the Complaint establishes conduct by Tyler that is unlawful, unfair and fraudulent within the meaning of the statute.

<u>***First***</u>, the County adequately pleaded "fraudulent" conduct by Tyler.  Tyler does not dispute that the County pleaded a practice that is capable of deceiving the public and the local governments that are entrusted with public funds.  *See Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (holding that a "business practice is fraudulent under the UCL if members of the public are likely to be deceived").  Instead, Tyler's sole basis for seeking dismissal of the County's UCL claim under the fraudulent prong is that the County's allegations do not satisfy Rule 9(b).  ECF No. 9 (Motion to Dismiss) at 9:11-26.  Tyler's argument should be rejected for the same reasons set forth above in Part

IV.A.  As Tyler does not advance any other basis for dismissal of the County's UCL claim, the County's UCL claim should proceed under the fraudulent prong.

*Second*, the County adequately pleaded "unlawful" conduct by Tyler.  The UCL's "unlawful" prong "borrows violations of other laws… and makes those unlawful practices actionable under the UCL" and that "[v]irtually any law or regulation—federal or state, statutory or common law—can serve as a predicate . . . ."  *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018).  Tyler's sole basis to seek dismissal of the County's UCL claim under the "unlawful" prong is the plainly incorrect argument that "[t]he only potential violation of any law alleged by Kern's claim is Tyler supposed breach of contract."  ECF 9 (Motion to Dismiss) at 9:28-10:1.  For the reasons discussed in Parts IV.A and IV.B, the County adequately pleaded both actual fraud and a claim for violations of the CFCA on which the County can predicate its UCL claim under the unlawful prong.

*Third*, the County adequately pleaded "unfair" conduct by Tyler.  The Motion does not explain the basis for Tyler's argument.  Rather, Tyler merely states that "Kern's UCL claim is simply not proper and should be dismissed."  ECF No.  9 (Motion to Dismiss) at 11:5-6.  In contrast to Tyler's conclusory assertion of a pleading defect, the County's UCL claim under the unfair prong is predicated on substantive allegations demonstrating that Tyler's unscrupulous and deceptive business practices offend the established public policy of protecting taxpayer and public funds from fraud, waste, and abuse.  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (holding that conduct is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.") (quoting *Davis*, 691 F.3d at 1169).  Because the County sufficiently pleaded specific facts detailing Tyler's fraudulent, unlawful and unfair conduct, Tyler's motion to dismiss should be denied.

### D.    The County's Claim For Negligence Is Not Barred By The Economic Loss Rule.

Tyler contends that the County's negligence claim is barred by the economic loss rule.  Tyler is correct that, under the economic loss rule, purely economic losses are generally not recoverable in tort.  ECF 9 (Motion to Dismiss) at 11:8-10.  However, Tyler's oversimplified argument overlooks two well-established exceptions to the economic loss rule applicable to the County's negligence claim.

*First,* California courts recognize an "independent duty exception to the economic loss rule,"

which applies where the defendant's conduct "violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999). This exception applies where

> (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of. . . substantial consequential damages.

*Erlich*, 21 Cal. 4th at 553-54 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995)).

Here, the County's negligence claim is accompanied by adequately pleaded claims for fraud and deceit against Tyler. *See* Part IV.A. The Complaint also alleges that Tyler intentionally breached the contract and knew that its breach would cause the County substantial consequential damages. This is particularly true in light of the business disruption caused by Tyler, including the loss of resources and thousands of worker-hours by County employees that total over $9 million. Compl. ¶ 24. In addition to Tyler's negligent implementation and operationalization of Odyssey, Tyler also negligently hired, supervised and retained employees that did not possess the skill or expertise to implement and operationalize Odyssey and damaged the County's system through the loss of data and credentials. *Id*. at ¶¶ 71-74. Tyler also negligently marketed its skills and expertise working with California public entities when Tyler did not possess the requisite experience with California public entities and possessed no understanding of (and subsequently refused to learn) the regulatory reporting requirements that Odyssey needed to support for the County to comply with State of California mandates. *Id*. at ¶¶ 23, 71-74. Thus, the County's claims are predicated on independent legal duties that Tyler owed the County and Tyler's breach of those independent legal duties. Thus, the County's negligence claim falls within the independent duty exception and is not barred by the economic loss rule.

**_Second_**, "the economic loss rule does not prevent recovery in tort if a 'special relationship' exists between the plaintiff and the defendant." *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1131 (N.D. Cal. 2018) (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979); *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)). The special relationship exception applies where the plaintiff and

defendant are in privity of contract and the contract is for "services" rather than "goods."  *Id.* (citing *North Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 784 (1997); *CoreLogic, Inc. v. Zurich Am. Ins. Co.*, No. 15-CV-03081-RS, 2016 U.S. Dist. LEXIS 121633, at *13-15 (N.D. Cal. Sept. 8, 2016)).  Indeed, the economic loss rule "has not been applied in California to limit a plaintiff's tort damages" when "plaintiff's loss arises from a negligent performance of services." *CoreLogic*, 2016 U.S. Dist. LEXIS 121633, at *15 (quoting *North Am.*, 59 Cal. App. 4th at 777).  This is because California courts recognize "that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract." *City and Cnty. of San Francisco v. Cambridge Integrated Servs. Grp., Inc.*, No. C 04-1523 VRW, 2007 U.S. Dist. LEXIS 51376, *12 (N.D. Cal. July 2, 2007); *see also Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1435 (2003) ("Under the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract.").

Here, the Agreement and Amendment are undeniably for "services," and opposed to "goods," because Tyler contracted with County to provide an integrated information system.  The Agreement is for the provision of "professional services" and "maintenance and support services." Ex. A at 1, 6, 13; *see In re: Yahoo!*, 313 F. Supp. 3d at 1132 (holding that defendant's terms of service is "properly characterized as a contract for services" where it states "Yahoo! provides the Yahoo! Services").  Even if the contracts involved a "mix of goods and services," the "essence" of the Agreement and Amendment is the provision of services, not goods. *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171 (2008) (stating that courts must "look to the 'essence' of the agreement" where a contract involves a mix of goods and services).  In making this determination, "[t]he court may compare the relative cost of the goods and services in the transaction and the purpose of the agreement in order to determine whether it is predominantly a sale of goods or transaction for services." *C9 Ventures v. SVC-West, L.P.*, 202 Cal. App. 4th 1483, 1494 (2012).  Under the Agreement, Tyler's professional services, maintenance and support totaled $3,749,230 of the $5,331,230 value of the contract (with an additional reoccurring annual fee of $332,220 for maintenance and support services), while the Amendment was entirely for "services."  Compl., Ex. A at 2, Ex. B at 1.

Thus, there can be no reasonable dispute that the Agreement and Amendment are for "services"

and not "goods."  As a result, the economic loss rule does not apply to the County's negligence claim. *CoreLogic*, 2016 U.S. Dist. LEXIS 121633, at *15 (holding that the economic loss rule does not apply where plaintiffs alleged that "defendants negligently performed an attendant professional service" under a contract for services).

## V.   **CONCLUSION**

For the forgoing reasons, the County respectfully requests that the Court deny Tyler's motion to dismiss in its entirety.

DATED:  July 16, 2020

**FOLEY & LARDNER LLP**
EILEEN R. RIDLEY
ALAN R. OUELLETTE
JAIME DORENBAUM


By:*/s/* Eileen R. Ridley
EILEEN R. RIDLEY
Attorneys for Plaintiff
COUNTY OF KERN

MARGO A. RAISON, COUNTY COUNSEL
ANDREW C. THOMSON, CHIEF DEPUTY
Attorneys for Plaintiff
COUNTY OF KERN

COUNTY OF KERN'S OPPOSITION TO DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS
CASE NO. 1:20-CV-00853- AWI-JDP