1  BETH W. PETRONIO, *pro hac vice*
   beth.petronio@klgates.com
2  K&L GATES LLP
   1717 Main Street, Suite 2800
3  Dallas, TX 75201
   Telephone:  (214) 939-5815
4  Facsimile:   (214) 939-5849

5  JASON N. HAYCOCK (SBN 278983)
   jason.haycock@klgates.com
6  JONATHAN THEONUGRAHA (SBN 306812)
   jonathan.theonugraha@klgates.com
7  K&L GATES LLP
   Four Embarcadero Center, Suite 1200
8  San Francisco, CA 94111
   Telephone:  (415) 882-8200
9  Facsimile:   (415) 882-8220

10 Attorneys for Defendant
   TYLER TECHNOLOGIES, INC.

11

12                **UNITED STATES DISTRICT COURT**

13                **EASTERN DISTRICT OF CALIFORNIA**

14                     **YOSEMITE DIVISION**

15

16 COUNTY OF KERN,                          Case No. 1:20-cv-00853

17              Plaintiff,

18 vs.                                      **DEFENDANT TYLER TECHNOLOGIES,**
                                            **INC.'S REPLY IN FURTHER SUPPORT**
19 TYLER TECHNOLOGIES, INC., and            **OF ITS MOTION TO DISMISS**
   DOES 1 THROUGH 20, inclusive,
20                                          Date:      August 10, 2020
              Defendants.                   Time:      1:00 p.m.
21                                          Dept.:     302
                                            Judge:     The Hon. Jeremy D. Peterson
22

23                                          Complaint Filed:  May 18, 2020
                                            Trial Date:       TBD
24

25       Kern's[1] Opposition to Tyler Technologies, Inc.'s Motion to Dismiss (Dkt. No. 14; the

26 "Opposition" or "Opp.") doubles down on its improper effort to transform this disputed breach of

27 contract claim into fraud case.  Despite Kern's colorful—and completely conclusory and unfounded—

28 ─────────────────
   [1]     Capitalized terms used herein have the same meaning defined in Tyler's Motion to Dismiss [Dkt. No. 9].

allegations, this is nothing more than a dispute regarding whether the parties performed their respective obligations pursuant to the Agreement.  Kern's Opposition, like its Complaint, improperly leaps to incorrect and unsupportable conclusions, suggesting that Tyler lied about its ability to implement the system—a system that has been successfully implemented and is in active use in multiple jurisdictions across the United States.  Even with the benefit of Kern's Opposition, which takes literary license when describing the actual allegations in the Complaint, Kern's fraud allegations remain vague and conclusory and ultimately are tied to nothing more than Tyler's purported failure to perform certain of its contractual obligations.  Kern cannot base its fraud claims on alleged breaches of contractual terms, and this Court should not permit Kern to engage in artful pleading to transform a run-of-the-mill contract dispute into a fraud case.  Plaintiffs' fraud, negligence, and unfair competition claims should be dismissed.

## I.     ARGUMENT AND AUTHORITIES

### A.     Kern Failed to Adequately Allege Fraud

1.   Kern Improperly Bases its Fraud Claims on Alleged Breaches of Contractual Terms

Kern's "fraud" allegations are summed up in one paragraph of Kern's Complaint and echoed again in its Opposition as follows:

> (1) Tyler would ultimately deliver Odyssey in an integrated, operational and usable form, (2) Tyler possessed the expertise, staff and skills necessary to deliver Odyssey in an integrated, operational and usable form, (3) Tyler was on track to complete the installation and implementation of Odyssey; (4) Tyler was in the process of correcting, and had corrected, issues and problems experienced by the County with Odyssey's functionality and integration, and (5) Odyssey had the technical capacity and ability to accommodate the needs of the County's criminal justice divisions.

Complaint ¶ 11, *see also id.* at ¶¶ 15, 37, 46, 56; Opp., p. 2.[2]

Each of these purported examples of fraud, however, are plucked directly from purported obligations under the Agreement and merely recast as allegations of fraud.  As Kern does not and cannot dispute, a "mere failure to perform on a contract does not constitute fraud."  *Richardson v.*

---

[2]     As is true throughout the Opposition, Kern has taken certain liberties with re-writing the allegations in the Complaint.  The first full paragraph on page 7 of the Opposition presents a good example, as it purports to cite from paragraph 11 of the Complaint, yet describes the 5 bullet points contained in that paragraph in strikingly different language.  *Compare* Opp. p. 2 *with* Complaint ¶ 11.

TYLER TECHNOLOGIES INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

*Reliance Nat'l Indemnity Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. March 9, 2000) (citing *Rhenigans v. Smith*, 161 Cal. 362, 366 (1911); see also Dkt. No. 9 (Mot.), 6:24-8:16 (citing additional supporting authority).

For example, Kern's first allegation of fraud regarding Tyler's obligation to "ultimately deliver Odyssey in an integrated, operational and usable form," is at the very heart of the Agreement.  *See, e.g.,*  Agreement, pp. 17-58 (Statement of Work that "presents the phases, tasks, and activities that Tyler will execute to implement the Odyssey solution for Kern").  Kern derives its  second allegation of fraud—that Tyler misrepresented that it "possessed the expertise, staff and skills necessary to deliver Odyssey in an integrated, operational and usable form—from Section 11.1 of the Agreement, where Tyler agrees that its employees must be "qualified to perform the tasks assigned them." Agreement, p.8.

Kern also lifted its third allegation of fraud regarding Tyler's obligation to properly report whether Tyler was "on track to complete the installation and implementation" directly from the Agreement.  *See, e.g.*, Agreement p. 59-64 (providing "draft project schedule [that] will serve as a working schedule that is updated by the [joint Tyler and Kern project managers] throughout the project.").

Kern's fourth allegation of fraud regarding Tyler's obligation to correct issues and problems addressed by Kern also arises from the Agreement.  *See, e.g.,* Agreement, p. 7 ¶ 6.3 (requiring Tyler to "validate that the Licensed Software substantially complies" and noting that Kern's "sole right and remedy against Tyler shall be to require Tyler to correct the cause thereof."); Agreement, pp. 13-16 (setting out Tyler's maintenance and support obligations).

Finally, Kern's fifth allegation of fraud—that Tyler misrepresented that "Odyssey had the technical capacity and ability to accommodate the needs of the County's criminal justice divisions"— is also a mere recasting of contract terms as a basis for fraud.  *See, e.g.*, Agreement, p. 33, Phase 2 (contracting to "configur[e] [] the Odyssey solution *to meet the County's specific needs*") (emphasis added), *and* Task 2.2 ("The Project is focused on providing a COTS-based Odyssey solution that is configured to the County's business needs[,]" and providing for an "allowance of 1,800 development hours for establishing any customizations identified" by Kern during the "Business Process Review").

It is apparent on the face of Kern's Complaint that the parties' dispute is clearly contractual. Kern's attempt to reframe this contractual dispute as a basis for fraud is improper as a matter of law and the Court should dismiss Kern's fraud claims.

2. <u>Kern Failed to Allege Fraud With Specificity</u>

Beyond improperly relying on contractual obligations and, in a conclusory fashion, alleging that Tyler "misrepresented" its ability to satisfy them, Kern also fails to plead any supporting factual detail required by Federal Rule 9(b).  Allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted).  For a complaint to satisfy the heightened pleading requirements of FRCP 9(b), "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id*. (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  Conclusory statements do not suffice as factual allegations "if those conclusions cannot reasonably be drawn from the facts alleged." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).  Kern's allegations fail for at least four reasons.

First, Kern's allegations are vague and conclusory, lacking any true specificity.  For example, despite the fact that there are 43 specific contractual milestones outlined in the Agreement (Agreement, pp. 3-4), Kern makes no effort to actually identify which of these milestones Tyler allegedly failed to deliver.  Nor does Kern identify which of these 43 milestones were the subject of allegedly false "invoices" by virtue of Tyler's supposedly false assurances that they were completed.  Likewise, Kern makes no effort to identify any particular item or items that needed to be "corrected" and that Tyler supposedly failed to correct or falsely stated it had corrected.  Instead, Kern's allegations are made generally about a broad swath of Tyler's contractual obligations and in a conclusory fashion without the required detail.

Second, although Kern claims that it identified five specific individuals at Tyler that were responsible for making these misrepresentations, they do not identify any specific false *statement* made by any of those individuals at any specific time about any specific issue.  Instead, Kern vaguely asserts that these individuals made some unspecified general misrepresentations about Tyler's ability to perform the contract over a period of three and a half years.  *See* Opp. at 7 (asserting that Tyler

1   made misrepresentations from the May 2015 execution of the Agreement through "at least September

2   2018").

3          As if recognizing the weakness of its pleading, Kern urges the Court to accept that the pleading

4   rules are "less stringently applied" where fraud occurred over a period of time.  Opp. at 7 (citing

5   *Hargrove & Constanzo v. Comm'r*, 240 F.R.D. 652, 655 (E.D. Cal. 2006).  Importantly, the *Hargrove*

6   *& Constanzo* court found that "a blanket statement covering five years will not do."  *Id.* at 658.  Instead,

7   that court recognized that allegations of fraud over long periods of time were only sufficient if they

8   also included "*specific dates*" on which key misrepresentations were made.  *Id.* (citing *U.S. v.*

9   *Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006) (emphasis added).

10          Indeed, at least one court has noted that allegations that "misrepresentations occurred over the

11   course of 'several weeks' does not adequately indicate when and where the alleged fraud took place."

12   *Segal Co. v. Amazon*, 280 F.Supp.2d 1229, 1231 (W.D. Wash. 2003).  Kern failed to provide any such

13   "specific dates" and its blanket allegations about generic and unspecified misrepresentations over the

14   course of three and a half years simply does not meet the heightened pleading standard of Rule 9(b).

15          Third, Kern makes no effort to explain, as required by Rule 9(b), how Tyler's alleged

16   assurances about its ability to perform were false *when they were made*.  In *GlenFed*, the Ninth Circuit

17   explained that a statement is not necessarily fraudulent merely because it is contradicted by later-

18   discovered facts.  42 F.3d at 1547.  Instead, Rule 9(b) requires plaintiffs to plead facts establishing the

19   falsity of a statement at the time it is made.  *See id.*  A plaintiff "is precluded from simply pointing to

20   a defendant's statement, noting that the content of the statement conflicts with the current state of

21   affairs, and then concluding that the statement in question was false."  *Id.*

22          Here, Kern has not met (and cannot meet) the *GlenFed* standard.  Instead, Kern merely alleges

23   that Tyler represented during the course of the implementation that it was able to meet its contractual

24   obligations.  Kern next alleges that Tyler did not meet its obligations, and then asks this Court to

25   conclude *ipso facto* that Tyler must have been lying about its ability to perform.  This is precisely what

26   *GlenFed* and its progeny warn against—"mere failure to perform on a contract does not constitute

27   fraud."  *Richardson v. Reliance Nat'l Indemnity Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4

28   (N.D. Cal. March 9, 2000) (citing *Rhenigans v. Smith*, 161 Cal. 362, 366 (1911)); *Smith v. Allstate Ins.*

*Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001) (rejecting an effort to use "the alleged breach of contract" as "evidence that [defendant] never intended to honor the contract, thereby committing fraud."); *see also* Motion to Dismiss at 7 (citing numerous cases refusing to permit breaches of contract to be transformed into fraud claims merely by asserting that a party misrepresented their ability to perform).

Finally, in part because Kern's allegations are so vague, Kern provides no explanation for what is supposedly false or misleading about a specific statement and why that statement is false, as required by *Vess* and *GlenFed*.  *Vess*, 317 F.3d at 1106; *GlenFed*, 42 F.3d at 1548.  For example, Kern generically alleges that Tyler misrepresented its ability to complete the project, yet fails to provide any context for such a statement.  To satisfy Rule 9(b), Kern would need to allege a specific statement regarding Tyler's ability to undertake a *specific* task and would also have to allege facts supporting the conclusion that Tyler knew *at the time it made that statement* that Tyler was unable to complete that *specific* task.  Kern has made not such effort in its Complaint or in its Opposition.

Kern's effort to bolster its allegations by suggesting—again in a speculative and conclusory manner—that Tyler acknowledged the deficiencies with Odyssey because it acquired another software company should also fail to withstand Federal Rule 9(b) scrutiny.  Kern claims that "Tyler acquired CaseloadPRO for the specific purpose of replacing Odyssey because Tyler knew that it could not implement or operationalize Odyssey for use by probation departments across the country."  Opp. at 2.

Kern's proffered inference as to why Tyler acquired CaseloadPRO is complete speculation.  Tellingly, Kern fails to plead any factual support that would allow even a plausible inference that Tyler acquired CaseloadPRO for the fraudulent purposes instead of for legitimate business reasons wholly unrelated to this case.  Absent such factual support, Kern's speculative inference cannot support a fraud claim.  *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (holding that a complaint must be dismissed if it "tenders naked assertions devoid of further factual enhancement" and dismissing claims based on conclusory allegations unsupported by factual assertions); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

(holding that courts need not consider "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Kern itself knows that allegation to be unfounded.  Kern has zero knowledge or evidence of Tyler's acquisition strategy, in general or specific to CaseloadPRO, and Kern's efforts to tie that acquisition strategy to some sort of intentional misconduct has no factual support in the Complaint or elsewhere.  There is no dispute that Odyssey has been implemented and is in active use by probation departments across the country.

It is unfortunate, if not unfair, that Kern can make such an allegation at the motion to dismiss stage, knowing that Tyler's ability to refute this conjecture is limited on this record.  Nonetheless, even if the Court takes the statement at face value, the allegations about CaseloadPRO are still too conclusory and speculative to satisfy Rule 9(b).  Kern is required to plead some facts, other than mere speculation, that support its proffered inference that Tyler, which frequently purchases companies that have developed complementary software products like CaseloadPRO, actually purchased CaseloadPRO specifically because Tyler knew Odyssey did not work.  And, Kern should be required to plead some factual background to support the conclusory allegation that Tyler knew that it was going to "abandon" Odyssey and "replace it with CaseloadPRO."  Kern cannot support this conclusory allegation with actual facts, and its inability to do so fails to satisfy Rule 9(b).

Kern's Opposition also relies heavily on an unreported decision from the Eastern District of California in a case filed against Tyler.  Opp. at 6 (citing *Sacramento Reg'l Pub. Safety Commc'ns Ctr. v. Tyler Techs., Inc.*, No. 2:18-cv-1792-KJM-KJN, 2019 U.S. Dist. LEXIS 45250 (E.D. Ca. Mar. 19, 2019)).  The *Sacramento* case is distinguishable here on an important ground.  The central allegations there involved alleged *pre-contractual* misrepresentations that supposedly "induced plaintiff to enter into a contact."  *Id.* at *7-8.  Here, all of the (vague and conclusory) allegations involve post-contractual representations about the ability to perform that supposedly resulted in Kern permitting Tyler to continue with the implementation.  Such post-contractual statements should, for the reasons set for in *Smith* and *Richardson*, be subject to higher scrutiny.  Kern must clearly allege that the post-contractual statements about performance were knowingly false when made.

**B.    Kern's False Claims Act Claim Fails Because Kern Did Not Allege Materiality**

Kern's False Claims Act claim also fails because Kern has not alleged materiality on the face of its Complaint.  Liability under the False Claims Act is subject to an additional "judicially-imposed requirement that the false statement of claim be material."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999).  Kern does not dispute the materiality requirement, but suggests that can be inferred from Complaint.  *See* Opp. at 7-8.  Kern's Complaint makes no attempt to explain how any allegedly false statements were independently or collectively material.  Indeed, because Kern has not sufficiently identified any specific milestones that Tyler allegedly misrepresented as complete, it is impossible to draw the conclusion that any such milestone was actually material.  Without more specificity regarding the materiality allegations, this claim should be dismissed.

**C.    Kern's Statutory Unfair Competition Claim Also Fails**

Kern's Statutory Unfair Competition claim fails in multiple respects as well.  First, because Kern's Complaint alleges a UCL claim based on fraudulent conduct, Kern's failure to satisfy FRCP 9(b) is fatal to its entire Statutory Unfair Competition claim.  As noted above, FRCP 9(b) applies to allegations of "fraudulent" conduct under the UCL, regardless of which prong of the UCL Kern attempts to invoke.  *See also Kearns*, 567 F.3d at 1125.  Second, even if parts of Kern's Complaint survive Rule 9(b), Kern nonetheless fails to state a claim under the UCL's unlawfulness prong.  The only real basis alleged by Kern is Tyler's supposed breach of contract.  *See* Complaint ¶ 56 (alleging that Tyler misrepresented its "ability and intent to implement Odyssey in an integrated, operational and usable form").  "A breach of contract may form the predicate for a section 17200 claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (emphasis added) (citation omitted).  However, the failure to plead "that the breaches of contract are independently unlawful, unfair, or fraudulent" defeats such a claim.  *Id.*; *see also Shroyer*, 622 F.3d at 1044.  A conclusory allegation of unlawful, unfair or fraudulent conduct is not sufficient.  *Pena v. McArthur*, 889 F. Supp. 403, 407-08 (E.D. Cal. 1994)[3].

---

[3]    In *Sacramento Reg'l*, which Kern relies on heavily in other areas of the Opposition, the court reviewed similar allegations that failing to fulfill a contractual agreement was done in bad faith and gave rise to a UCL claim.  2019 U.S. Dist. LEXIS 45250 at *9-10.  The court rejected the UCL claims there, a fact that Kern's Opposition fails to mention.

Finally, Kern's Complaint also fails to state a claim under the UCL's unfairness prong. Kern's Opposition suggests that Tyler's conduct was "unfair" because it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Opp. at 11 (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). Yet, nowhere in the Complaint or in the Opposition does Kern actually allege any immoral or unscrupulous acts that are injurious to consumers generally. Allegations of Tyler's breach of contract cannot suffice. In the absence of specific allegations of "facts showing that a business practice is unfair," dismissal is proper. *Davis*, 691 F.3d at 1170-71.

**D.    Kern Fails to Establish a Breach of Duty Independent of the Contract**

The economic loss rule provides that "no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise that undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). A plaintiff is required to recover in contract for purely economic loss due to disappointed expectations, unless it can demonstrate harm above and beyond a broken contractual promise. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Kern does not dispute this well-established rule but rather argues that it does not apply here by citing two narrow exceptions, both of which are inapplicable to this case.

First, Kern asserts that the economic loss rule does not apply due to the "independent duty exception." Opp. at 11-12. This argument fails, however, because Kern has failed to allege a breach of any legal duty independent of Tyler's duty to perform pursuant to the Agreement. The "independent legal duties" that Kern alleges Tyler breached arise entirely from duties to perform that Tyler had under the Agreement. *See supra* Section I.A. Such claims are precisely what the economic loss rule was intended to prevent. Indeed, "[i]f every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Robinson Helicopter Co.*, 34 Cal. 4th at 990.

Second, Kern argues that the economic loss rule does not apply when a "special relationship" exists between the parties and the contract is for services rather than goods. Opp. at 12-13. This argument also fails as the special relationship exception does not apply in cases involving parties

engaged in an arm's length transaction. *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1042 (2006) (noting that "courts have not applied the [special relationship exception] to create broad tort duties in arms-length business dealings"); *Erlich v. Menezes*, 21 Cal. 4th 543, 553 (1999) (declining to apply the special relationship exception between sophisticated parties who both exercised control over the contract terms).

Courts have also explicitly held that the economic loss rule applies to contracts for services. *See, e.g., Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. C06-2590 CW, 2006 WL 2458759, at *5 (N.D. Cal. Aug. 22, 2006) (holding that the economic loss rule and "the limitation on tort recovery applies to the negligent performance of services as well as to the negligent manufacture of goods"); *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 824297, at *4 (N.D. Cal. Feb. 28, 2014) (applying the economic loss rule in a case involving a contact for advertising *services* to dismiss claims for fraudulent concealment and negligent interference with prospective economic advantage) (emphasis added).

Simply put, Kern's negligence claim does not arise out of a legal duty independent from the duties provided in the Agreement.  The factual allegations underpinning Kern's negligence claim are identical to those that comprise its breach of contract claim.  Accordingly, Kern's negligence claim is barred by the economic loss rule and should be dismissed.

## **CONCLUSION**

WHEREFORE, Tyler respectfully requests, for the reasons articulated herein, that the Court grant the motion and dismiss Kern's claims for Intentional Misrepresentation; Concealment; Statutory Unfair Competition; False Claims Act; and Negligence, and grant Tyler such other and further relief to which it may be entitled.

**K&L GATES LLP**

Dated:  August 3, 2020

By:  */s/ Jason N. Haycock*
   BETH W. PETRONIO
   JASON N. HAYCOCK
   JONATHAN THEONUGRAHA

   Attorneys for Defendant
   TYLER TECHNOLOGIES, INC.