# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF KERN,<br><br>  Plaintiff,<br><br>v.<br><br>TYLER TECHNOLOGIES, INC., and DOES 1 THROUGH 20, inclusive,<br><br>  Defendants. | CASE: 1:20-cv-00853-AWI-HBK<br><br>**ORDER GRANTING DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS**<br><br>(Doc. No. 8) |

On May 19, 2020, Plaintiff County of Kern ("County") filed an action in Kern County Superior Court alleging claims in contract and tort against Defendant Tyler Technologies, Inc. ("Tyler") in connection with the installation of an informational technology system. Doc. No. 1-1. Tyler removed the action to this Court and brought a motion under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure to dismiss several claims for failure to state a claim on which relief can be granted.[1] Doc. No. 8. That motion is now before the Court. For the reasons set forth below, it will be granted.

## SUMMARY OF ALLEGATIONS

On or about May 5, 2015, the County entered into a Software License and Professional Services Agreement (the "Agreement") with Tyler. Doc. No. 1-1 at 14:24-15:7.[2] Under the

---

[1] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.
[2] Unless otherwise indicated, all citations to page numbers in records on the Court's electronic docket are to the page numbers in the CM/ECF stamp at the top of each page.

1  Agreement, Tyler agreed to install, implement and service an integrated information system,
2  known as Odyssey Case Manager ("Odyssey"), throughout the County's criminal justice divisions,
3  including the Sherriff's Office, Probation Department, Jail, District Attorney's Office and Public
4  Defender's Office. Id. at 14:27-15:16. On or about September 12, 2017—after more than two
5  years of work on Odyssey—the County and Tyler entered into an amendment to the Agreement
6  (the "Amendment"). Id. at 17:2-4. Under the Amendment, the County allowed for additional
7  payment to Tyler in exchange for certain enhancements to the system. Id. at 17:5-9.

8        On August 28, 2018, the County informed Tyler that if Tyler did not complete installation
9  of Odyssey by November 28, 2018, the County would invoke the termination provisions in the
10 Agreement, based on Tyler's breach of the Agreement and Amendment. Doc. No. 1-1 at 22:22-
11 23:2. Following that correspondence, Tyler informed the County that it was abandoning its plan to
12 use Odyssey for the Probation Department and would instead use a new information system that it
13 acquired in September 2018 called CaseloadPRO. Id. In March 2019, the County issued a "Notice
14 of Breach" and directed Tyler to stop work. Id. at 23:22-24. "To date, Tyler has failed to deliver or
15 implement an integrated, operational and useable information system to the County for its criminal
16 justice divisions and, in fact, the County has had to continue to rely upon its legacy system." Id. at
17 17:26-28. In spite of this, Tyler continues to invoice the County for services that it has not
18 performed and will not perform. Id. at 23:25-28.

19     After the execution of the Agreement, Tyler repeatedly represented to the County that: (1)
20 Tyler would deliver Odyssey in an integrated, operational and useable form; (2) Tyler possessed
21 the capability to deliver Odyssey as promised; (3) installation was on track; (4) defects in
22 Odyssey's functionality and integration were being corrected; and (5) Odyssey could meet the
23 needs of the County's criminal justice divisions. Doc. No. 1-1 at 16:13-24. These representations
24 were made by numerous Tyler employees, including Ken Miles, Teresa Perry, Gina Sewell,
25 Shayne Boyd and Brian Williams. Id.

26     Tyler also manipulated error reports, made improper use of temporary fixes, and lied to the
27 County to create the false impression that Odyssey was working properly, without correcting
28 system defects. Doc. No. 1-1 at 21:12-22. For example, Tyler employees, including Steven Leduc,

1  used the login credentials of County employees without the County's knowledge or permission to
2  access Odyssey and manually complete tasks that Odyssey should have been able to perform on its
3  own. Id. Further, Tyler falsely represented that invoices submitted to the County accurately
4  reflected work relating to the implementation of Odyssey, including data conversion, integration,
5  training and maintenance. Id. at 17:14-24. The County also alleges that Tyler purchased
6  CaseloadPro in September 2018 because Tyler realized it could not implement Odyssey for the
7  Probation Department but withheld this information while continuing to bill the County for
8  pointless work implementing Odyssey for the Probation Department. Id. at 22:22-23:15.
9      Based on the foregoing allegations, the County brings claims against Tyler for: (1) breach
10 of contract; (2) intentional misrepresentation; (3) concealment; (4) violations of the California
11 Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL"); (5) violations of the
12 California False Claims Act (Cal. Gov. Code §§ 12650, *et seq.*) ("CFCA"); (6) negligence; and (7)
13 declaratory relief. Doc. No. 1-1 at 13.

## DEFENDANT'S MOTION TO DISMISS

15     Tyler contends that the County's claims for intentional misrepresentation, concealment,
16 violations of the UCL and violations of the CFCA must be dismissed because they have not been
17 pleaded with the particularity required for fraud and claims grounded in fraud under Rule 9(b) of
18 the Federal Rules of Civil Procedure. Further, Tyler contends that the County has failed to allege
19 materiality for its CFCA claim and that the County's negligence claim is barred by California's
20 economic loss rule. The County contends that Rule 9(b) pleading requirements have been
21 satisfied; that its CFCA materiality allegations are plainly sufficient; and that its claim for
22 negligence is covered by exceptions to the economic loss rule for intentional breach, professional
23 negligence and services contracts.

## LEGAL FRAMEWORK

25     Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which
26 relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on
27 the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a
28 cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In

3

reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.

In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (citation and internal quotation marks omitted).

//
//
//

**DISCUSSION**

The Court will evaluate each of the County's arguments for dismissal in turn.

**I.     Rule 9(b) Pleading Standard**

Tyler argues that the County's claims for intentional misrepresentation, concealment and violations of the CFCA, as well as the claim predicated on the "fraudulent" prong of the UCL, must be dismissed because the County has failed to plead fraud with the specificity required under Rule 9(b). Doc. No. 9 at 10:5-10. The County does not dispute that Rule 9(b) applies to these "fraud-based claims" but contends that it is has pleaded the elements of fraud with particularity and that where, as here, "fraud allegedly occurred over a period of time . . . Rule 9(b)'s requirement that the circumstances of fraud [] be stated with particularity [is] less stringently applied." Doc. No. 14, Part IV.A. (quoting Hargrove & Constanzo v. Commissioner, 240 F.R.D. 652, 655 (E.D. Cal. 2006)).

   **A.     Applicable Law**

Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed.R.Civ.P. 9(b). "[W]hen averments of fraud are made, the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted). Rule 9(b) also serves "to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996) (citation, quotation marks and brackets omitted).

"The Ninth Circuit has identified two aspects of th[e] particularity requirement" for pleading fraud. In re Glenfed, Inc. Securities Litigation, 42 F.3d 1541, 1552-1553 (9th Cir. 1994).

5

"First, the plaintiff's allegations must identify the time, place and content of the alleged misrepresentation so that the defendant can identify the statement," and "[s]econd, the plaintiff must plead facts explaining why the statement was false when it was made…." Id.

As to the first requirement, allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106; see also, Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."). The second requirement can be satisfied in a number of ways—including, for example, inconsistent contemporaneous statements, later admissions by the defendant or circumstantial evidence—but "the plaintiff is precluded from simply pointing to a defendant's statement, noting that the content of the statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made …." In re Glenfed, 42 F.3d at 1552-1553; see also, id. at 1548 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.")

The Rule 9(b) pleading standard applies not only to common law fraud claims, but also to claims that are "grounded in fraud." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (citation and quotation marks omitted). Thus, it applies to CFCA claims, as well as to claims based on the "fraudulent" prong of the UCL. See id. at 1125 (finding that Rule 9(b) applies to the UCL); United States v. Kiewit Pac. Co., 41 F. Supp. 3d 796, 802 (N.D. Cal. 2014) (same); cf. U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) (stating that complaints brought under the federal Fair Claims Act "must fulfill the requirements of Rule 9(b)").

**B.     Discussion**

Here, the County alleges that various Tyler employees "repeatedly represented" over a period of several years that:

> (1) Tyler would ultimately deliver Odyssey in an integrated, operational and usable form, (2) Tyler possessed the expertise, staff and skills necessary to deliver Odyssey in an integrated, operational and usable form, (3) Tyler was on track to

6

>complete the installation and implementation of Odyssey; (4) Tyler was in the process of correcting, and had corrected, issues and problems experienced by the County with Odyssey's functionality and integration, and (5) Odyssey had the technical capacity and ability to accommodate the needs of the County's criminal justice divisions.

Doc. No. 1-1 at 16:13-19. A handful of the Tyler employees who were allegedly involved in making these representations are named in a list, but no specificity is provided as to who made which of these representations or when the representations were made. See id. at 16:19-24. Moreover, no allegations are provided as to *how* these representations were supposedly made or *what* was said. See Vess, 317 F.3d at 1106. The list of misrepresentations set forth in the Complaint are the County's characterization in summary form of information supposedly conveyed in some fashion by unspecified Tyler employees over a period of several years. Under California law, a cause of action for fraud requires the plaintiff to establish: (1) a knowingly false representation by the defendant; (2) made with intent to deceive or induce reliance by the plaintiff; (3) justifiable reliance by the plaintiff; and (4) resulting damages. See Wilkins v. NBC, 71 Cal. App. 4th 1066, 1081 (1999). Even allowing for generalized allegations as to intent, the Court obviously cannot draw an inference that reliance on a representation was "justifiable" or that a representation was "false" (let alone "knowingly false") without knowing what statement was made. Further, the only basis the County provides for an inference that representations made by Tyler were false is that Tyler purchased (and chose to deploy) another information management system several years after entering the Agreement and ultimately failed to deliver Odyssey as promised. Such allegations as to events that later came to pass are insufficient to support the inference that the representations in question were false when made. See In re Glenfed, 42 F.3d at 1552-1553.

The County's generalized allegations regarding the supposed manipulation of the Odyssey system to conceal defects are similarly insufficient to state a fraud claim because the County again omits essential facts regarding the "who, what, where, when and how" of the alleged wrongdoing. The County alleges that "Tyler employees, including Steven Leduc" logged into Odyssey surreptitiously, completed various tasks through extraordinary means, and then generated false reports showing that tasks had been performed by the system, without human intervention. See

Doc. No. 1-1 at 21:23-22:4. That is fine, as far as it goes, but the Court needs more information—such as when the reports were generated, who generated them, who saw them and what tasks were supposedly falsified—to infer falsity and justifiable reliance for a fraud claim.

Finally, the County's reliance on this Court's order in *Hargrove & Constanzo v. Commissioner* is misplaced and misleading. While it is true that "there is some leeway to be given when the conduct alleged took place over a long period of time," that applies to allegations regarding "when" misrepresentations were made, and less so (if at all) to allegations regarding the "who," "what," "where" and "how" of misrepresentations. See 240 F.R.D. 652, 658 (E.D. Cal. 2006); see also, United States v. Hempfling, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006). Further, this Court expressly found in *Hargrove* that "a blanket statement covering five years will not do," while noting that cases in which courts had given "leeway" to pleadings involved at least some allegations as to specific dates of wrongdoing. Hargrove, 240 F.R.D. at 658. In any event, the allegations of fraud in *Hargrove* were more substantial than the fraud allegations in this action yet were still found to be lacking. Id.

The Court therefore finds that the County has failed to allege any form of fraud and that its claims for intentional misrepresentation, concealment, violation of the CFCA and violation of the "fraudulent" prong of the UCL must be dismissed.

**II.      Materiality Under the CFCA**

Tyler asserts that even if the County has satisfied Rule 9(b) pleading standards, the CFCA claim still fails because the County has failed to allege materiality. Doc. No. 9 at 8:18-19.

The CFCA was enacted to "prevent fraud on the public treasury." State of California v. Altus Finance, 36 Cal.4th 1284, 1296 (2005) (citations and quotation marks omitted). As relevant here, the CFCA establishes liability for one who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval." Cal. Gov. Code § 12651(a)(1); see Doc. No. 1-1 at 30:6-7. The CFCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services." Cal. Gov. Code § 12650(b)(4).

Here, the County alleges that Tyler falsely represented that invoices submitted to the

government were for work that was necessary and work that had been completed. Doc. No. 1-1 ¶¶ 62-64, 67. The Court cannot imagine a scenario in which statements that work was necessary and complete would not have a "tendency to influence" payment for such work. See Cal. Gov. Code § 12650(b)(4). The Court therefore finds that the County has adequately pled materiality for its CFCA claim. See Sacramento Reg'l Pub. Safety Commc'ns Ctr. v. Tyler Techs., Inc., 2019 WL 1255252, at *4 (E.D. Cal. Mar. 19, 2019) (finding materiality where contractor invoiced and received payment "by misrepresenting its progress on [a] project").

### III. California's Unfair Competition Law

The UCL prohibits unfair competition, which Section 17200 of the California Business and Professions Code broadly defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Kearns, 567 F.3d at 1127 (quoting Cal. Bus. & Prof. Code § 17200). Thus, to prevail on a claim under the UCL based on a business act or practice, a plaintiff must show that the act or practice in question is: (1) forbidden by law ("unlawful"), (2) more harmful than beneficial to the victim ("unfair") or (3) likely to deceive members of the public ("fraudulent"). See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010). Each prong of the UCL is a separate and distinct theory of liability and therefore offers an independent basis for relief. See South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999); see also, Shroyer, 622 F.3d at 1043 ("[The UCL] is written in the disjunctive, establishing 'three varieties of unfair competition.' ").

The County contends it has claims under all three prongs of the UCL, whereas Tyler contends that the County fails to state any claim under the UCL. The Court agrees with Tyler for the following reasons.

First, as set forth above, the County has failed to allege fraud with the particularity required under Rule 9(b). Therefore, the County cannot state a claim under the "fraudulent" prong of the UCL. See Sipe v. Countrywide Bank, 690 F. Supp. 2d 1141, 1158 (E.D. Cal. 2010) ("[T]o the extent Plaintiff asserts a UCL claim that is based on or grounded in fraud, it must meet the requirements of Rule 9(b)."); see also, Moss v. Infinity Ins. Co., 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) (dismissing claim under the "fraudulent" prong of the UCL on finding of "insufficient

detail under Rule 9(b)").

Second, fraud and CFCA violations are the only bases set forth by the County for its claim under the "unlawful" prong of the UCL. Doc. No. 16:3-11 (stating "the County adequately pleaded both actual fraud and a claim for violations of the CFCA on which the County can predicate its UCL claim under the unlawful prong"). As set forth above, however, the County has not stated a fraud claim or a CFCA claim. Consequently, the County's claim under the "unlawful" prong of the UCL fails.

Third, the County contends it has stated a claim under the "unfair" prong of the UCL based on "substantive allegations demonstrating that Tyler's unscrupulous and deceptive business practices" offend public policy against "fraud, waste, and abuse." Doc. No. 14 at 16:14-20. Further, the allegations recited in support of the UCL claim state that "Tyler induced the County to enter into and remain in the Agreement and Amendment by repeatedly misrepresenting" its ability to deliver Odyssey as promised; that "Tyler's scheme was predicated on deceit"; and that Tyler "artificially" inflated invoices. Therefore, the County's claim under the "unfair" prong of the UCL is also "grounded in fraud" and fails accordingly.

In sum, the Court finds that the County has failed to state a claim under any of the three prongs of the UCL.

**IV.   Negligence and the Economic Loss Rule**

   **A.   Applicable Law**

Under California's economic loss rule, "a plaintiff suffering only economic damages may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." Arena Restaurant and Lounge LLC v. Southern Glazer's Wine and Spirits, LLC, 2018 WL 1805516, at *6 (N.D. Cal. Apr. 16, 2018) (citing Aas v. Superior Court, 24 Cal.4th 627, 643 (2000); Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 988 (2004)) (quotation marks omitted); see also, Oracle USA, Inc. v. XL Glob. Servs., Inc., 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) ("the fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement"). The "mere negligent breach of a contract is not

sufficient basis for imposing tort liability." Patriot Sci. Corp. v. Korodi, 504 F. Supp. 2d 952, 964 (S.D. Cal. 2007) (citing Erlich v. Menezes, 21 Cal.4th 543, 552 (1999)). Tort damages are only permitted in contract cases where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." Erlich, 21 Cal.4th at 552 (citation omitted); see also, Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 515 (1994).

"This rule serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages." WeBoost Media S.R.L. v. LookSmart Ltd., 2014 WL 824297, at *4 (N.D. Cal. Feb. 28, 2014) (citing Robinson Helicopter, 34 Cal.4th at 988). Further, it "serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." Applied Equip. Corp., 7 Cal.4th at 515. As a result, the economic loss rule is particularly applicable to "commercial activities that negligently or inadvertently go awry." Robinson Helicopter, 34 Cal.4th at 991 n.7; see also, Barvie v. Bank of Am., N.A., 2018 WL 4537723, at *5 (S.D. Cal. Sept. 21, 2018) (claim that defendant "failed to act with reasonable care in its transactions with its customers" barred by the economic loss rule because reasonable care is "an implied term in the contract between the bank and its depositor").

**B. Discussion**

Tyler contends that the County's negligence claim is barred by California's economic loss rule because it alleges nothing more than breach of contractual obligations under the Agreement and the Amendment. Doc. No. 9 at 11:16-28. The County, however, contends that its negligence claim falls within two exceptions to the economic loss rule. Doc. No. 14, Part IV.D.

First, the County argues, based on *Erlich v. Menezes*, that its claim falls into an "independent duty" exception to the economic loss rule that applies where conduct "violates a duty independent of the contract arising from principles of tort law." Doc. No. 14 at 16:28-17-2. Specifically, the County contends that this exception applies where:

> (1) [a] breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm …

11

21 Cal. 4th at 553-554. Each of these scenarios, however, involves a duty that "arises from conduct which is both intentional and intended to harm." See Erlich, 21 Cal.4th at 552; see also, id. at 554 ("Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated."). Here, the claim in question merely alleges negligent breach, with no allegation of intentional wrongdoing, let alone intent to harm. Doc. No. 1-1 at 30:21-31:15. As a matter of settled law, that is not sufficient to allow recovery in tort. Erlich, 21 Cal.4th at 552 ("The question thus remains: is the mere negligent breach of a contract sufficient? The answer is no."); see also, Patriot Sci. Corp., 504 F. Supp. 2d at 964 (finding that the economic loss rule barred tort recovery where the claim at issue "[was] styled as one for negligence, and [] contain[ed] only allegations of negligence").

Second, the County argues that the economic loss rule does not apply because the County has a "special relationship" with Tyler by virtue of the fact that the contract in question is for services rather than goods. Doc. No. 14 at 17:25-19:4. Further, the County contends that the economic loss rule has not been applied to limit a plaintiff's tort damages when "plaintiff's loss arises from a negligent performance of services." Doc. No. 14 at 17:25-18:8.

In making this argument, the County relies primarily on three cases: *In re: Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018); *Corelogic, Inc. v. Zurich American Insurance Company*, 2016 WL 4698902 (N.D. Cal. Sept. 8, 2016); and *City & County of San Francisco v. Cambridge Integrated Services Group, Inc.*, 2007 WL 1970092 (N.D. Cal. July 2, 2007).

Reviewing these cases, the Court sees two slightly different variants of the "special relationship" concept in connection with contracts for "services." They overlap somewhat, but it is nonetheless helpful to examine them separately. The first variant, as set forth in *Cambridge*, is "that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract." Cambridge, 2007 WL 1970092 at *4. In essence, *Cambridge* appears to find that negligently breaching contractual obligations as to the delivery of professional services inherently involves professional negligence—as opposed to mere ordinary negligence—and that professional negligence falls

outside the economic loss rule the way intentional breach can fall outside the economic loss rule. See id. at *4-*5 (analyzing duties arising from professional services contracts in the context of professional negligence and legal malpractice cases). The California Supreme Court, however, "consider[ed] the distinction between 'ordinary' and 'professional' negligence" at length in *Flowers v. Torrance Memorial Hospital Medical Center* and "conclude[d] that with respect to questions of substantive law they comprise essentially one form of action." 8 Cal. 4th 992, 995 (1994). Further, the Court found: (i) that "[w]ith respect to professionals, their specialized education and training do not serve to impose an increased duty of care but rather are considered additional 'circumstances' relevant to an overall assessment of what constitutes 'ordinary prudence' in a particular situation"; and (ii) that "denominating a cause of action as one for 'professional negligence' does not transmute its underlying character," since the standard of care remains "ordinary prudence." Id. at 997-998. Thus, the gravamen of the claim remains mere negligence. As such, the Court cannot find an exception to the economic loss rule based on the rationale set forth in *Cambridge*.

      The second variant of the "special relationship" and "services contract" argument that the Court sees in the cases cited by the County is that a "special relationship" arising from services contracts (and, especially, contracts for professional services) imposes duties on service providers that go beyond their contractual obligations and therefore provide independent bases for tort claims. In *Corelogic*, for example, the court declined to dismiss a negligence claim under the economic loss rule where plaintiff alleged that defendant had "negligently performed *an attendant professional service*" by failing to renew a renewable surety bond, even though the bond itself did not contain a term requiring renewal. 2016 WL 4698902 at *5 (emphasis added); see also, In re Cty. of Orange, 245 B.R. 138, 148–149 (C.D. Cal. 1997) ("S & P's position in the securities field may have caused it to assume *an independent professional duty* enforceable in a tort action." (emphasis added)). In *Yahoo!*, similarly, the court drew a distinction between goods contracts and services contracts and found, in essence, that a services contract can give rise to an extra-contractual "duty" on the part of a service provider based on factors such as "the extent to which the transaction was intended to affect the plaintiff"; "the foreseeability of harm to the plaintiff";

and "the moral blame attached to the defendant's conduct." Yahoo!, 313 F. Supp. 3d at 1132.

The line of reasoning in *Corelogic* and *Yahoo!*, however, appears to be at odds with the California Supreme Court's holding in *Erlich*. In *Erlich*, a married couple sued "a licensed general contractor" after discovering leaks in a residence they contracted with him to build. 21 Cal.4th at 548. The defendant contractor had been unable to stop the leaks, so plaintiffs had the home inspected by another general contractor and a structural engineer, who found "serious errors in the construction of the home's structural components," "[i]n addition to confirming defects in the roof, exterior stucco, windows and waterproofing." Id. at 548-549. At trial, the jury found the defendant contractor had "breached his contract … by negligently constructing the[] home" and also awarded damages for the tort of emotional distress. Id. at 549-550. The Court of Appeal affirmed the judgment, including the emotional distress award, and the California Supreme Court granted review to determine "whether a negligent breach of a contract will support an award of damages for emotional distress" as tort damages for negligence. Id. at 550-551.

In addressing this question, the California Supreme Court found not only that "mere negligent breach of a contract" is not sufficient for a tort claim under the economic loss rule, but also that the "special relationship test" had "little relevance" to the case because the defendant contractor was "one among thousands of contractors" "in the business of building single-family homes"; plaintiffs "could take their choice among any contractors willing to accept work in the area where their home would be constructed"; and plaintiffs "were in a position to view, inspect, and criticize [the contractor's] work, or to hire someone who could," even though they "undoubtedly relied on [the contractor's] claimed expertise." Erlich, 21 Cal.4th at 553.

In light of *Erlich*, the Court cannot find, as the County urges, that the economic loss rule does not apply to services contracts. See Rejects Skate Magazine, Inc. v. Acutrack, Inc., 2006 WL 2458759, at *5 (N.D. Cal. Aug. 22, 2006) (the economic loss rule "applies to the negligent performance of services as well as to the negligent manufacture of goods"). And if, in the view of the ultimate arbiter of California law, no "special relationship" arises between an expert contractor and private laypersons in connection with the broad array of specialized services required for the construction of a home, the Court cannot see how a "special relationship" could possibly arise

between a technology vendor and a county government in connection with the delivery of services required for installation of an information management system. See Frank M. Booth, Inc. v. Reynolds Metals Co., 754 F. Supp. 1441, 1449–50 (E.D. Cal. 1991) ("On balance, the court finds that the prevailing view of the California courts denies recovery between contracting commercial parties when the claim is based upon either strict products liability or negligence and is asserted solely for economic losses.").

In short, the claim at issue here is pleaded as a claim for negligent breach of contractual duties and nothing more. The County has failed to show that any exception to the economic loss rule applies and the claim is therefore barred.

## **CONCLUSION**

For the foregoing reasons, the Court will dismiss the County's claims for intentional misrepresentation, concealment, violations of the CFCA, violations of the UCL and negligence. The claims for intentional misrepresentation, concealment, violations of the CFCA and violations of the UCL will be dismissed without prejudice because they could be cured through particularized pleading as to the "who, what, when, where and how" of the wrongdoing in question. The claim for negligence will be dismissed with prejudice in light of the Court's findings that services contracts do not give rise to extra-contractual duties on the part of service providers and that claims for negligent breach of contractual duties are barred by the economic loss rule even when professional negligence might be implicated.

//
//
//
//
//
//
//
//
//

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 8) is GRANTED;
2. Plaintiff's claims for intentional misrepresentation, concealment, violations of the CFCA and violations of the UCL are DISMISSED WITHOUT PREJUDICE;
3. Plaintiff's claim for negligence is DISMISSED WITH PREJUDICE;
4. Plaintiff is granted LEAVE TO AMEND the Complaint consistent with the analysis and findings in this order and to file a First Amended Complaint no later than 30 days from the date of electronic service of this order;
5. This case is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   February 3, 2021

SENIOR DISTRICT JUDGE