1  BETH W. PETRONIO, (admitted *pro hac vice*)
   beth.petronio@klgates.com
2  K&L GATES LLP
   1717 Main Street, Suite 2800
3  Dallas, TX 75201
   Telephone: (214) 939-5815
4  Facsimile: (214) 939-5849

5  JASON N. HAYCOCK (SBN 278983)
   jason.haycock@klgates.com
6  JONATHAN THEONUGRAHA (SBN 306812)
   jonathan.theonugraha@klgates.com
7  K&L GATES LLP
   Four Embarcadero Center, Suite 1200
8  San Francisco, CA 94111
   Telephone: (415) 882-8200
9  Facsimile: (415) 882-8220

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# YOSEMITE DIVISION

| | |
|---|---|
| COUNTY OF KERN,<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>Defendants.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>COUNTY OF KERN,<br><br>Counter-Defendant. | Case No. 1:20-cv-00853-AWI-HBK<br><br>**DEFENDANT TYLER TECHNOLOGIES, INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**<br><br>District Court Judge: Hon. Anthony W. Ishii<br>Magistrate Judge: Hon. Helena M. Barch-Kuchta<br><br>Complaint Filed: May 18, 2020<br>FAC Filed: March 5, 2021<br>Trial Date: January 11, 2022 |

Defendant Tyler Technologies, Inc. ("Tyler") submits this Answer and Affirmative Defenses to the First Amended Complaint (the "Complaint") filed by Plaintiff County of Kern, California ("Kern") and hereby states as follows:

**PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

As previously asserted in Tyler's Motion to Dismiss (Dkt. Nos. 8 & 9), Tyler contends that Kern's Complaint is improperly attempting to transform a disputed breach of contract claim into a False Claims Act/common law fraud case. Tyler contends that, at most, this case is a disagreement about whether Tyler properly implemented a software system for Kern consistent with a Software License and Services Agreement dated May 5, 2015. Kern's First Amended Complaint, like its Original Complaint, improperly leaps to incorrect and unsupportable conclusions, suggesting that Tyler lied about its ability to implement the system—a system that has been successfully implemented and is in active use in multiple jurisdictions across the United States. Even with the benefit of repleading, Kern's fraud allegations ultimately are tied to nothing more than Tyler's purported failure to perform certain of its contractual obligations. Kern should not be permitted to base its fraud claims on alleged breaches of contractual terms or engage in artful pleading to transform a run-of-the-mill contract dispute into a fraud case. Tyler reserves all rights to reassert the arguments asserted in the Motion to Dismiss at a later stage in this case.

**ANSWER**

1. Tyler admits the allegations in paragraph 1 of the Complaint.

2. Tyler admits the allegations in paragraph 2 of the Complaint.

3. Tyler admits the allegations in paragraph 3 of the Complaint.

4. Tyler admits that this judicial district is a proper venue, that the events that are the subject of the Complaint occurred in this judicial district and that Tyler is operating, doing business and engaged in activities in this judicial district. Tyler denies the remaining allegations in paragraph 4 of the Complaint.

5. Tyler admits the allegations in paragraph 5 of the Complaint.

6. Tyler admits that Tyler entered into an agreement for the implementation of certain Odyssey software modules with Kern and that a component of that agreement included a license for

the use of the software, but denies the remaining allegations in the first sentence of paragraph 6 of the Complaint. Tyler admits that the language quoted in the next two sentences of paragraph 6 of the Complaint accurately quotes the parties' agreement, but otherwise denies the remaining allegations in paragraph 6 of the Complaint.

7. Tyler is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first three sentences of paragraph 7 of the Complaint. To the extent a response is required, Tyler denies the allegations. Tyler denies the allegations in the last sentence of paragraph 7 of the Complaint.

8. Tyler admits that the language quoted in paragraph 8 of the Complaint accurately quotes the parties' agreement, but otherwise denies the allegations in paragraph 8 of the Complaint.

9. Tyler admits that the language quoted in paragraph 9 of the Complaint accurately quotes the parties' agreement, but otherwise denies the allegations in paragraph 9 of the Complaint.

10. Tyler denies the allegations in paragraph 10 of the Complaint.

11. Tyler denies the allegations in paragraph 11 of the Complaint.

12. Tyler denies the allegations in paragraph 12 of the Complaint.

13. Tyler denies the allegations in paragraph 13 of the Complaint

14. Tyler admits the allegations in paragraph 14 of the Complaint.

15. Tyler admits that the language quoted in paragraph 15 of the Complaint accurately quotes the parties' agreement, but otherwise denies the allegations in paragraph 14 of the Complaint.

16. Tyler denies the allegations in paragraph 16 of the Complaint.

17. Tyler admits that, between May 2015 and the present, Tyler invoiced Kern in connection with the parties' agreement, but otherwise denies the allegations in the first sentence of paragraph 17 of the Complaint. Tyler denies the allegations in the second sentence of paragraph 17 of the Complaint. Tyler admits that Kern has paid Tyler $4,213,897.00 million as required by the parties' agreement, but Tyler is without knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 17 of the Complaint. To the extent a response is required, Tyler denies the allegations in the third sentence of paragraph 17 of the Complaint. Tyler denies the allegations in the last sentence of paragraph 17 of the Complaint.

| | |
|---|---|
| 1 | 18. Tyler admits the allegations in the first sentence of the first bullet point of paragraph 18 of the Complaint, but otherwise denies the remaining allegations in the first bullet point of paragraph 18 of the Complaint. Tyler admits the allegations in the first two sentences of the second bullet point of paragraph 18 of the Complaint, but otherwise denies the remaining allegation in the second bullet point of paragraph 18 of the Complaint. Tyler admits the allegation in the first sentence of the third bullet point of paragraph 18 of the Complaint, but otherwise denies the remaining allegations in the third bullet point of paragraph 18 of the Complaint. Tyler admits the allegation in the first sentence of the fourth bullet point of paragraph 18 of the Complaint, but otherwise denies the remaining allegations in the fourth bullet point of paragraph 18 of the Complaint. Tyler admits the allegations in the first sentence of the fifth bullet point of paragraph 18 of the Complaint, but denies the remaining allegations in the fifth bullet point of paragraph 18 of the Complaint. Tyler admits the allegations in the first sentence of the sixth bullet point of paragraph 18 of the Complaint, but otherwise denies the remaining allegations in the sixth bullet point of paragraph 18 of the Complaint. Tyler admits the allegations in the first sentence of the seventh bullet point of paragraph 18 of the Complaint that "Tyler billed, and the County paid, on invoice encompassing two Configuration Plans and two Configuration Tracking Spreadsheet (Invoice Nos. 020-10831) in the total amount of $193,800," but otherwise denies the remaining allegations in the seventh bullet point of paragraph 18 of the Complaint. Tyler admits the allegation in the eighth bullet point of paragraph 18 of the Complaint that "Tyler billed, and the County paid, an invoices [sic] for the 'Load of Legacy Data into Staging Database' (Invoice Nos. 020-10831 for $149,600)," but denies the remaining allegations in the eighth bullet point of paragraph 18 of the Complaint. Tyler denies the allegations in the ninth bullet point of paragraph 18 of the Complaint. |
| | 19. Tyler denies the allegations in paragraph 19 of the Complaint. |
| | 20. Tyler denies the allegations in paragraph 20 of the Complaint. |
| | 21. Tyler denies the allegations in paragraph 21 of the Complaint. |
| | 22. Tyler admits that Kern reported issues to Tyler through Tyler's SharePoint system and that issues were assigned an "ODY" number, but Tyler denies the remaining allegations in paragraph 22 of the Complaint. |

23. Tyler denies the allegations in paragraph 23 of the Complaint.

24. Tyler denies the allegations in paragraph 24 of the Complaint.

25. Tyler denies the allegations in paragraph 25 of the Complaint.

26. Tyler is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint. To the extent a response is required, Tyler denies the allegations.

27. Tyler admits that it received correspondence from Kern dated August 28, 2018, which correspondence speaks for itself. Tyler denies the remaining allegations in paragraph 27 of the Complaint.

28. Tyler denies the allegations in paragraph 28 of the Complaint.

29. Tyler denies the allegations in paragraph 29 of the Complaint.

30. Tyler denies the allegations in paragraph 30 of the Complaint.

31. Tyler denies the allegations in the first sentence of paragraph 31 of the Complaint. Tyler admits that it received correspondence from Kern dated March 12, 2019, which correspondence speaks for itself, but Tyler denies the remaining allegations in the second sentence of paragraph 31 of the Complaint.

32. Tyler denies the allegations in paragraph 32 of the Complaint.

33. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

34. Tyler denies that the County has performed all obligations required under the Agreement as alleged in the first sentence of paragraph 34 of the Complaint. The allegations in the remaining portions of paragraph 34 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Tyler denies the remaining allegations in paragraph 34 of the Complaint.

35. Paragraph 35 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 35 of the Complaint.

36. The first sentence of paragraph 36 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in the first sentence of paragraph 36 of the Complaint. Tyler denies the allegations in the second sentence of paragraph 36 of the Complaint.

37. Tyler denies the allegation in the first sentence of paragraph 37 of the Complaint that it breached the Agreement and Amendment. Tyler admits that Kern has paid $4,213,897.00 million as contemplated by the parties' agreement, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 37 of the Complaint. To the extent a response is required, Tyler denies the allegations. Tyler denies the allegations in the second sentence of paragraph 37 of the Complaint. The third and fourth sentences of paragraph 37 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in the third and fourth sentence of paragraph 37 of the Complaint.

38. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

39. Tyler denies the allegations in paragraph 39 of the Complaint.

40. Tyler denies the allegations in paragraph 40 of the Complaint.

41. Tyler denies the allegations in paragraph 41 of the Complaint.

42. Tyler denies the allegations in paragraph 42 of the Complaint.

43. Tyler denies the allegations in paragraph 43 of the Complaint.

44. Tyler admits that it submitted invoices to Kern in accordance with the parties' agreement, but denies the remaining allegations in paragraph 44 of the Complaint.

45. Tyler denies the allegations in paragraph 45 of the Compliant.

46. Paragraph 46 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 46 of the Complaint.

47. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

48. Tyler denies the allegations in paragraph 48 of the Complaint.

49. Tyler denies the allegations in paragraph 49 of the Complaint.

50. Tyler admits that it submitted invoices to Kern in accordance with the parties' agreement, but denies the remaining allegations in the first and second sentences of paragraph 50 of the Complaint. Tyler admits that Kern paid Tyler over $4.2 million in accordance with the parties' agreement, but denies the remaining allegations in paragraph 50 of the Complaint.

51. Tyler denies the allegations in paragraph 51 of the Compliant.

52. Tyler denies the allegations in paragraph 52 of the Complaint.

53. Tyler denies the allegations in paragraph 53 of the Complaint.

54. Tyler denies the allegations in paragraph 54 of the Complaint.

55. Paragraph 55 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 55 of the Complaint.

56. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

57. Paragraph 57 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 57 of the Complaint.

58. Tyler denies the allegations in paragraph 58 of the Complaint.

59. Tyler admits that Kern has paid Tyler over $4.2 million in accordance with the parties' agreement, but denies the remaining allegations in paragraph 59 of the Complaint.

60. Tyler denies the allegations in paragraph 60 of the Complaint.

61. Paragraph 61 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 61 of the Complaint.

62. Paragraph 62 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 62 of the Complaint.

63. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

64. Tyler admits that it submitted invoices to Kern in accordance with the parties' agreement, but denies the remaining allegations in paragraph 64 of the Complaint.

65. Tyler denies the allegations in paragraph 65 of the Complaint.

66. Tyler denies the allegations in paragraph 66 of the Complaint.

67. Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 67 of the Complaint.

68. Tyler denies the allegations in paragraph 68 of the Complaint.

69. Tyler admits that Kern paid Tyler over $4.2 million in accordance with the parties' agreement, but denies the remaining allegations in paragraph 69 of the Complaint.

70. Paragraph 70 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 70 of the Complaint.

71. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

72. Tyler denies the allegations in paragraph 72 of the Complaint.

73. Tyler admits that it has not refunded amounts paid by Kern in accordance with the parties' agreement, but denies the remaining allegations in paragraph 73 of the Complaint.

74. Tyler admits that it is entitled to additional payment from Kern in accordance with the parties' agreement and that Kern refuses to make any such payment, but denies the remaining allegations in paragraph 74 of the Complaint.

75. Paragraph 75 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 75 of the Complaint.

76. Paragraph 76 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 76 of the Complaint.

77. To the extent any response is required, Tyler denies the allegations in the prayer for relief on pages 30-31 of the Complaint.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim against Tyler on which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

Kern has waived any right to seek damages pursuant to any purported cause of action stated against Tyler.

### **THIRD AFFIRMATIVE DEFENSE**

Kern's claims are barred, in whole or in part, by the equitable doctrine of estoppel.

### **FOURTH AFFIRMATIVE DEFENSE**

Kern's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

### **FIFTH AFFIRMATIVE DEFENSE**

Kern's claims are barred, in whole or in part, by the limitation of liabilities provisions in the Agreement.

### **SIXTH AFFIRMATIVE DEFENSE**

Kern's claims are barred, in whole or in part, by Kern's prior breaches of the Agreement, including its failure to cooperate and to comply with the processes and procedures therein.

### **SEVENTH AFFIRMATIVE DEFENSE**

If Kern has sustained damages by reason of the allegations in the Complaint, which is expressly denied, then Kern may not recover for such damages because by its own acts and omissions, it has failed to properly mitigate such damages.

### **EIGHTH AFFIRMATIVE DEFENSE**

Kern has not sustained any damages as a consequence of the conduct alleged against Tyler in the Complaint and can state no claim for damages against Tyler based thereon.

## NINTH AFFIRMATIVE DEFENSE

To the extent Kern has incurred any damages, which is expressly denied, such alleged damages were not proximately or legally caused by Tyler.

## TENTH AFFIRMATIVE DEFENSE

Kern's claims are barred, in full or in part, by the economic loss doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE

An award of compensatory damages to Kern would be grossly disproportionate to any actual injury sustained by Kern and would therefore deny Tyler its rights under the Due Process and Excessive Fines clauses of the United States Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

Any alleged loss or damage that Kern claims to have sustained is speculative and uncertain, and therefore is not compensable.

Tyler reserves the right to assert additional defenses in the event discovery indicates they are appropriate.

## COUNTERCLAIM

Counter-Plaintiff Tyler Technologies, Inc. ("Tyler") files this Counterclaim against Counter-Defendant County of Kern, California ("Kern"). In support of its claims herein, Tyler respectfully alleges the following:

### I. PARTIES

78. Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler offers four solution groups, including Public Administration, Courts and Public Safety, K-12 Education and Transformative Technology. Tyler has implemented the Odyssey product suite in over 600 jurisdiction, including numerous statewide implementations. Tyler's Odyssey product suite has one

of Tyler's highest client satisfaction ratings, and Tyler prides itself on its excellent client services and ultimate client satisfaction.

79. Kern is a political subdivision of the State of California. Kern has appeared in this matter and can be served with process via its counsel of record.

## II. JURISDICTION AND VENUE

80. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and Kern are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

81. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Kern is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District.

## III. FACTUAL BACKGROUND

82. On May 5, 2015, Tyler and Kern executed a Software License and Professional Services Agreement, along with the various exhibits, attachments and ancillary documents related thereto (collectively, the "Agreement"). A copy of the Agreement is attached to Kern's Complaint as Exhibit A. Pursuant to the Agreement, Tyler agreed to provide Kern with a new Odyssey software system for Kern County's criminal justice departments (Sheriff's Office, Jail, Probation Office, District Attorney and Public Defender). Tyler also entered into a separate agreement to implement Odyssey's case management system for the Kern Superior Court, which is now live on Odyssey in the civil courts and in implementation for the criminal and traffic courts.

83. Odyssey modules are designed to be "off the shelf" products, meaning they are configurable out of the box, allowing individual clients to tailor certain Odyssey features to the individual client's processes and workflows. In addition, clients may ask Tyler to create custom enhancements within Odyssey to address specific client needs. Tyler often agrees to provide these custom development services, usually at an additional cost to the client.

84. The Agreement included three specific components: (i) Tyler would license its Odyssey software to Kern for a total of $1,582,000; (ii) Tyler would provide a total of 20,204 hours of professional services in connection with the implementation of the software and various specific

customizations and development projects, for a total cost of $3,417,000; and (iii) Tyler would provide various maintenance and support services at an annual rate of $332,220, commencing 18 months after the Agreement was executed.

85. The Agreement recognizes that the implementation of the Odyssey would be "a cooperative process requiring the time and resources of [Kern] personnel" and that Kern "shall, and shall cause its personnel to, use all reasonable efforts to cooperate with and assist Tyler as may be reasonably required to timely implement the Project, including, without limitation, providing reasonable information regarding its operations and reasonable access to its facilities." Exhibit A to Complaint (Agreement, p. 7). The Agreement further provides that "Tyler shall not be liable for failure to timely implement the Project when such failure is due to . . . the failure by [Kern] to provide such cooperation or assistance (either through action or omission)." *Id.*

86. The Agreement permits Kern to terminate the Agreement "for cause" in the event there has been "a material breach of [the Agreement], which has not been cured within ninety (90) days of the date such Party receives written notice of such breach." Exhibit A to Complaint (Agreement, Ex. A, Section 15.2).

87. The Agreement also permits Kern to terminate "without cause." Under that scenario, Kern would be required to "pay for all outstanding license fees and all services that have been rendered. For all partially completed deliverable[s] the County shall pay the percentage of that deliverable amount that has been completed." Exhibit A to Agreement (Agreement, Ex. A Section 15.3). Based on the Agreement, in the event of a termination without cause, Tyler is entitled to retain all previously paid fees and to be paid for all partially completed deliverables.

88. The Agreement also contains very specific procedures for addressing issues with the software. The Agreement refers to such problems as "Defects" and defines them as follows:

> any bug, error, contaminate, malfunction, or other defect in the Licensed Software caused by, arising from, or emanating from the reasonable control of Tyler that renders the Licensed Software in non-conformance with Tyler's then-current specifications.

Exhibit A to Complaint (Agreement, Ex. B, Section 1.5).

89. With regard to Defects, the Agreement requires Kern to:

> document all Defects in writing with sufficient information to recreate the Defect or otherwise clearly and convincingly document or evidence its occurrence, including, but not limited to, the operating environment, data set, user, or any other such information that Tyler may reasonably request. [Kern] shall deliver such information to Tyler concurrently with its notification to Tyler of a Defect… It is understood and agreed that the process of documenting a Defect hereunder may be a collaborative process between the County and [Tyler] which both parties shall, in good faith, reasonably participate as necessary.

Exhibit A to Complaint (Agreement, Ex. B, Section 2.1).

90. The procedures outlined in the Agreement with regard to Defects serve as Kern's sole mechanism to address alleged issues with the software. In the Agreement, Tyler "disclaims all other warranties, including, without limitation, the implied warranties of merchantability and fitness for a particular purpose." Exhibit A to Complaint (Agreement, p. 8). In addition, the Agreement contains clear limitations of liability:

> TYLER'S LIABILITY TO PURCHASER FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, WHETHER BASED ON A THEORY OF CONTRACT OR TORT, INCLUDING NEGLIGENCE AND STRICT LIABILITY, SHALL BE LIMITED TO: (A) PRIOR OPERATIONAL USE, THE LICENSE FEES PAID BY PURCHASER; AND (B) AFTER OPERATIONAL USE, TYLER'S OBLIGATIONS AS SET FORTH IN THE TERMS AND CONDITIONS OF THE SOFTWARE MAINTENANCE AGREEMENT. THE FORGOING LIMITATIONS DO NOT APPLY TO THE FOLLOWING CIRCUMSTANCES: (1) FRAUD; OR (2) FOR BREACH OF SECTION 13.1 (CLAIMS FOR BODILY INJURY OR PROPERTY DAMAGE) OR SECTION 13.2 (INTELLECTUAL PROPERTY INFRINGEMENT).
>
> IN NO EVENT SHALL TYLER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR LOSS OF BUSINESS OR LOSS OF DATA ARISING OUT OF THIS AGREEMENT, IRRESPECTIVE OF WHETHER THE PARTIES HAVE ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGE.

Exhibit A to Complaint (Agreement p. 8) (capitalization in original).

91. Section 16 of the Agreement provides that the parties "agree to use good faith, reasonable efforts to meet, discuss, and try to resolve any disputes arising out of, or relating to, th[e] Agreement for a period of sixty (60) days." Exhibit A to the Complaint (Agreement, p. 9).

92. The parties originally contemplated a November 28, 2016 go-live date for the software. The Agreement, however, contained no specific time for performance. During the course of the implementation, Kern made various decisions to expand the scope of the Agreement and struggled with other aspects of the implementation, leading to a delay in the anticipated go-live date that was agreed to by both parties. Indeed, in September 2017, the parties executed an Amendment to the Agreement confirming that they had "mutually agreed on additional project components for a successful implementation." Exhibit B to Complaint (Amendment p. 1). These additional project components included over 1,275 hours of additional professional services for newly added project enhancements. This was equal to more than 70% of the entire client development budget found in the original Agreement. Thus, the Amendment almost doubled the custom development scope of the project after two years of work.

93. In addition to the significant increase in scope, Kern's implementation faced other challenges as well. For example, data conversion and migration is a large part of every software implementation. Kern's existing data was not well organized and, as a result, was difficult to migrate to the new system. Kern repeatedly sought Tyler's assistance in efforts to manipulate the data, which created further delays and issues. In addition, communication between various divisions at Kern was lacking, and Tyler frequently received inconsistent or contradictory instructions from different divisions within Kern. The jail would request one thing with regard to offense codes, for example, and the DA's office would insist that it be done differently. These issues contributed to delays in implementation and, ultimately, to disagreement within Kern about how to proceed.

94. On August 28, 2018, Kern sent Tyler a letter indicating that it believed that the project was not close to completion and that some of the promised elements of the system were not working as desired. Kern provided Tyler with what it considered to be an updated open items list, which identified 213 allegedly open items. That letter threatened to "invoke section 15.2 of the Agreement," which sets out a process for a termination for cause that includes good faith cooperation during a cure period, if all identified open items were not resolved by November 28, 2018. The letter made no mention of a "Defect" or a "breach" and did not otherwise indicate that it was intended by Kern to give notice of a Defect or breach or to simultaneously initiate a cure period per the Agreement.

95. Tyler spent significant time analyzing the allegedly open items on Kern's list and provided a formal response to Kern's letter on November 6, 2018. Tyler's analysis revealed that Kern was either unfamiliar with or mistaken about the actual status of most of the allegedly outstanding tasks. Of the 213 items, Tyler had completed its obligations on 181 of the items. Sixteen other items were custom development requests that were outside the scope of the Agreement and that needed to go through a formal specification and estimation process before work could begin. Only 32 items actually remained outstanding and, of those, Tyler was awaiting information from Kern on at least 16 in order to complete the tasks. Based on the actual status of the allegedly outstanding items, Tyler advised Kern that it believed it was complying with its obligations in the Agreement and that there was no basis for Kern to terminate for cause. Tyler also emphasized its willingness to continue to work with Kern to complete the remaining 32 items, along with the additional out-of-scope items to the extent those were added to the Agreement's scope.

96. Following this effort to identify and analyze outstanding tasks, it seemed that the project was back on track. For example, Tyler and Kern had numerous meetings in December 2018, including meetings where Kern leadership approved various next steps and decision points. Tyler believed that parties had agreed to a cohesive game plan and that Kern was fully bought in on moving forward to complete the implementation. To that end, Tyler devoted significant additional resources to Kern in early 2019, and material progress was achieved on the next steps that Kern had agreed upon.

97. On March 12, 2019, Tyler unexpectedly received an email from Kern's in-house attorney ordering Tyler to stop work on all matters related to the Agreement. As of that date, Kern owed Tyler $1,721,602 in outstanding professional fees and an additional $342,186 of maintenance fees were coming due.

98. The initial stop-work notification was followed by a more formal letter dated March 15, 2019. Kern acknowledged that Tyler had been working in good faith since August 2018 to address the remaining outstanding issues. Kern noted for the first time that it considered its August 28, 2018 letter to have been a formal "Notice of Breach" even though that letter never used that terminology and never identified a specific "material breach," and threatened to invoke the termination for cause process only if Tyler did not successfully address Kern's list of supposed outstanding items. And,

Kern suggested that the time period between August and March had been Tyler's formal "cure period." Kern then vaguely contended that several "mission critical" elements of the system were not working as expected or were not available. Kern did not, however, identify any specific "Defect," "material breach," or other software functionality that was problematic—nor had it done so during the November/December timeframe when the parties were reviewing Tyler's feedback on the "open issues" list and determining next steps in the project. Indeed, Kern never formally responded to, much less disputed, the detailed status chart Tyler had provided on November 6, 2018.

99. Nonetheless, on May 3, 2019, Kern sent Tyler a letter indicating its intention to terminate the Agreement for "cause" and making a formal demand for reimbursement for $4.2 million paid pursuant to invoices issued in accordance with the terms of the Agreement since May 2016.

100. Thereafter, Tyler made every effort to engage in "good faith, reasonable efforts" to try to resolve the disputes as required by the dispute resolution procedures in the Agreement. Exhibit A to the Complaint (Agreement, p. 9). In contrast, while Kern attended various meetings, its efforts were far from "good faith, reasonable" attempts to work through the issues Kern itself had raised.

101. On May 18, 2020, Kern filed the Complaint, asserting various fraud and breach of contract claims and seeking not only reimbursement of the $4.2 million previously paid, but also claiming a right to over $9 million in consequential damages, additional punitive and treble damages, and attorneys' fees. None of the relief requested is permitted by the specific terms of the Agreement.

### IV. CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

102. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

103. Tyler and Kern entered into a valid, binding, and enforceable contract as described herein and as evidenced by the Agreement signed by the parties.

104. Tyler performed its obligations under the contract and at all relevant times, Tyler has been willing and able to perform its obligations under the Agreement.

105. Kern has materially breached the contract in numerous ways, including, without limitation, through the following actions and inactions:

(i). Kern has improperly sought to terminate for "cause" despite its failure to follow the appropriate procedures in the Agreement for identifying and addressing Defects and/or alleged material breaches of the Agreement;

(ii). Kern has failed and refused to pay Tyler for all outstanding fees that have been rendered, including partially completed deliverables, as required by the Agreement; and

(iii). Kern has repudiated its cooperation obligations under the Agreement, and, despite repeated requests, Kern has failed to cooperate in the implementation of the project, thereby breaching the Agreement;

106. As a direct and proximate result of Kern's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages and/or receive equitable relief, in an amount to be determined at trial. At this time, Kern owes Tyler at least $2,063,788, including $1,721,602 in professional fees and $342,186 in maintenance fees owned pursuant to the Agreement.

## COUNT II. – DECLARATORY RELIEF

107. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

108. An actual controversy and dispute exists between Kern and Tyler concerning their respective rights pursuant to the terms and conditions of the Agreement. A judicial declaration is necessary and desirable at this time so that the parties can understand their respective rights, duties and obligations.

109. Therefore, pursuant to 28 U.S.C. § 2201, Tyler seeks the following declaratory relief from this Court, declaring Tyler's rights pursuant to the Agreement:

(i). Tyler has not materially breached the Agreement;

(ii). Alternatively, even if Tyler had materially breached the Agreement, Kern did not follow the proper procedures to identify material breaches and permit Tyler a 90-day cure period, and, as a result, Kern is not permitted to terminate the Agreement for cause;

|     |       |        |                                                                                                                                                                                                                                                             |
| --- | ----- | ------ | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     |       | (iii). | Kern's purported termination of the Agreement was "without cause," and Kern is required to pay for all outstanding license fees and professional services that have been rendered, including partially completed deliverables;                                              |
|     |       | (iv).  | Kern failed to undertake "good faith, reasonable efforts" to resolve the disputes prior to filing suit, as required by Section 16 of the Agreement; and                                                                                                                     |
|     |       | (v).   | The limitation of liability provisions in the Agreement are binding and enforceable on Kern and prevent Kern from collecting (i) damages in excess of the total license fee paid, (ii) any other consequential or special damages of any kind.                              |
|     | 110.  |        | For the reasons set forth in this Counterclaim, Tyler is entitled to this declaratory relief.                                                                                                                                                                               |

## **PRAYER FOR RELIEF**

**WHEREFORE,** Tyler requests that this Court grant it judgment against Kern and award to Tyler:

(i). Tyler's actual damages in excess of the minimum jurisdictional limits of this Court as requested in Tyler's Counterclaim;

(ii). the declaratory relief requested in Tyler's Counterclaim;

(iii). pre-judgment interest as may be provided by law;

(iv). reasonable and necessary attorneys' fees and costs of court through trial and appeal of this action;

(v). post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

(vi). such other and further relief to which Tyler may be entitled.

**K&L GATES LLP**

Dated: April 2, 2021

By: */s/ Jonathan Theonugraha*
BETH W. PETRONIO
JASON N. HAYCOCK
JONATHAN THEONUGRAHA

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.

---

17
TYLER'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM